**Michael SAMANDER, Administrator of the Estate of Antone Samander, Plaintiff,**

v.

**Carl FLEMMIG, Defendant.**

**No. Civ. 3:96cv424 (JBA).**

United States District Court, D. Connecticut.

Sept. 2, 1998.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, Norman A. Pattis, Williams, Polan & Pattis, New Haven, CT, for Michael Samander, Individually & as Administrator of the Estate of Antone Samander, plaintiff.

Jerome A. Lacobelle, Jr., Law Offices Of Jerome A. Lacobelle, West Haven, CT, Michael J. Lefebvre, Michael J. McAndrews, McAndrews & Lefebvre, Hartford, CT, for Carl Flemmig, defendant.

### Ruling on Defendant's Motion for Summary Judgment
[doc. # 28]

ARTERTON, District Judge.

The sad circumstances giving rise to the family tragedy from which this case arises involve the fatal shooting of Antone Samander, shortly following his stabbing of his father. Because of the multiple "Mr. Samanders" in this case, the decedent will be referred to as "Antone," intending no disrespect to him. Antone's brother, Michael Samander, in his capacity as administrator of the estate of Antone Samander, filed this action under 42 U.S.C. § 1983, alleging that the defendant, a West Haven police officer, used unreasonable deadly force in violation of the Fourth and Fourteenth Amendments, when he shot and killed Antone. The defendant moves for summary judgment on the grounds that Carl Flemmig's actions were reasonable, and thus lawful, or in the alternative, that the actions of the defendant were not objectively unreasonable, and thus entitled to qualified immunity.

### Factual Background

On the morning of July 2, 1995, the defendant was called by neighbors to the Samander home in West Haven, Connecticut. Mufideh Samander, Antone's mother, had found Antone in the bathroom with a bloody knife, with which he had apparently just stabbed his father. Mrs. Samander went to the phone to call her other son for help, but Antone took the phone away from her, and ordered her not to move. Antone then took his mother to the living room couch, where he made her sit by physically restraining her.

Shortly thereafter, defendant Flemmig and another fellow officer entered the apartment with their guns drawn, and ordered Antone several times to put his knife down. Antone continued to stand with the knife, and the police walked back outside. After a short while, the police officers returned and twice repeated their command to Antone to put down his knife. He did not and the defendant opened fire on Antone, who fell to the floor, releasing the knife. Antone eventually died of gunshot wounds.

### Legal Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, "the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir.1996). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*quoting First Nat. Bank of Ariz. v.*

*Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, all reasonable inferences and any ambiguities must be drawn in favor of the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

## Discussion

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that a claim that a law enforcement official's use of excessive force in the course of making an arrest, investigatory stop, or other seizure of a person is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388, 109 S.Ct. 1865. The test of reasonableness "is not capable of precise definition or mechanical application." *Id.* at 396, 109 S.Ct. 1865. Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (*citing Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

Defendant Flemmig argues both that the plaintiff's case fails as a matter of law on the merits, and in the alternative, that he is entitled to qualified immunity. Inasmuch as the defense of qualified immunity has been construed as "an immunity from suit, not a mere defense to liability," the Court will consider that issue first. *See Warren v. Dwyer,* 906 F.2d 70 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990) (*citing Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (a right not to stand trial)).

### *Qualified Immunity*

 A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established or:

no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987) (citations and internal quotations omitted). "The right to be free of excessive force is clearly established. That there are constitutional limitations on the use of deadly force during the course of an arrest is also clearly established." *Salim v. Proulx,* 93 F.3d 86, 91 (2d Cir.1996) (*citing Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995); *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1)). Therefore, Officer Flemmig's entitlement to qualified immunity depends on an assessment of the objective reasonableness of his belief that his conduct did not violate Antone's right to be free of excessive force. The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). For the reasons that follow, the factual record currently before the Court is such that reasonable jurors could differ on the objective reasonableness of Flemmig's use of deadly force, and thus the Court cannot conclude that it was objectively reasonable for defendant to view his use of deadly force as reasonable or that reasonable officers could disagree. In other words, until a full factual record is established regarding Antone's conduct and activity at the time he was shot, particularly with regard to any imminent threat he appeared to present to defendant and/or any resistance or evasion he was engaged in, defendant has not yet established a factual record entitling him to qualified immunity or to summary judgment.

The Court begins by noting the somewhat unusual posture in which this motion is presented. It is defendant's contention that the plaintiff's version of events alone, without defendant's rebuttal version of events, entitles him to qualified immunity from liability for Antone's death. The plaintiff of course disputes this. In the alternative, plaintiff takes the somewhat unusual course of submitting defendant's own statement, which creates a genuine issue of fact as to what occurred, but which, if credited, would sup-

port defendant's entitlement to a defense of qualified immunity, as plaintiff concedes.

According to the record submitted by the defendant in support of summary judgment on both grounds, at the time the police arrived at the Samander apartment, they had reason to believe that Antone Samander had just stabbed his father with a knife at the apartment. (Def.'s Statement of Material Fact Not in Dispute, ¶ 3, 12). Before the police entered the apartment, the wounded Mr. Samander, who was waiting for the police outside the apartment, told them that his wife was inside, and his son was disturbed. (Def.'s Ex. B at 16). The police called to Mrs. Samander inside, who told them she was okay and not hurt. (Def.'s Ex. A at 21). After the police entered the apartment with their guns drawn, they could see Antone with the knife held in his right hand, raised to shoulder level. (Def.'s Statement of Material Fact Not in Dispute, ¶¶ 15–17). Antone did not respond to multiple police commands to put the knife down, after which the police left the apartment momentarily. (Id., ¶ 18–19). At this time, Antone was apparently standing very "stiff like wood." (Def.'s Ex. A at 28). After re-entering the apartment, the police twice commanded Antone to put the knife down. When he did not respond to this direction, the defendant opened fire upon Antone. (Def.'s Ex. A at 36–37).

In *Salim v. Proulx*, 93 F.3d 86, the Second Circuit held that the defendant police officer was entitled to a defense of qualified immunity as a matter of law for his role in the fatal shooting of a fourteen-year-old boy. In that case, the defendant police officer was attempting to locate and apprehend Eric Reyes, who had escaped from a juvenile detention center. Officer Proulx located Eric near his home, and when Eric ran away, Proulx followed. In the course of the chase, Eric threw a rock at Proulx, which struck him in the head. Proulx believed that Eric had a knife, and fired a warning shot to force him to retreat, but Eric was actually unarmed. Eventually, Proulx caught up to Eric. During the ensuing struggle, five or six children between the ages of eight and twelve arrived and started to hit and kick Proulx. At least one of the children tried to take Proulx's gun away from him. Eventually, the gun was taken out of Proulx's pocket,

and although there was a factual dispute as to who took the gun out of Officer Proulx's pocket, Officer Proulx eventually regained the gun and shot Eric. In finding that it was objectively reasonable for Proulx to believe that deadly force was necessary, the Second Circuit looked to the "immediate threat" criterion of *Graham*, 490 U.S. at 396, 109 S.Ct. 1865:

> [A]t the moment Officer Proulx fired his weapon, Eric was actively resisting arrest, and Proulx was being pummeled by more than five people. The police officer subsequently shot Eric "instinctively" in reaction to seeing Eric's hand on the barrel of his gun while the two were locked in a struggle.... Proulx shot Eric in the midst of a struggle when the possibility that Eric might gain control of the officer's weapon was imminent, a prospect with obvious danger for Proulx.

*Salim*, 93 F.3d at 91–92.

In applying the *Graham* factors to the version of events set forth by the defendant, the Court looks to the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. In this case, the severity of the crime at issue, the knifing attack of Antone's father, is undisputably serious. By the time the police confronted Antone, they knew at least some of the details of his attack upon his father, and they also knew that Antone was restraining his mother in the apartment, although she gave them no indication of any injury.

While it was not unreasonable for defendant Flemmig to conclude that Antone might stab again, on this record, the questions of whether Antone by his conduct at the time he was shot actually posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight, cannot be clearly answered. The deposition testimony of Mrs. Samander indicates that Antone made no movement towards the officers, but rather was standing stiff and rigidly, with the knife at shoulder level. (Def.'s Ex. A). At the time that the defendant shot Antone, there is no indication that Antone made any attempt to flee from the officers,

or made any actively threatening movements towards them other than continuing to hold the knife "stiffly" after being told to put it down. This record provides the Court with an insufficient factual basis for concluding that Antone posed an immediate threat to the safety of the officers or was actively resisting arrest such that an objectively reasonable officer would believe that deadly force was necessary or that reasonable officers could disagree over the appropriateness of the use of deadly force. In contrast to a projectile weapon, such as a gun, a knife poses less potential for harm from a distance. Defendant's record reflects no facts indicating that Antone had made any movement to throw the knife at the officers, or facts from which it can be inferred that he intended to close the distance between them in order to attack the defendant with the knife. This record also lacks any indication that Antone was imminently about to flee. In fact, the record indicates the opposite—Antone was "weirdly stiff." (Def.'s Ex. A at 18). There is no indication that the officers attempted to use less than deadly force to subdue Antone, or that such an attempt would have been unadvisable under the circumstances.

As to whether Antone posed a threat to his mother, the record similarly gives no indication either that Antone was a threat to his mother or that the officers perceived him as such at the time deadly force was used. There is nothing suggesting that Antone near the dining table had made any threatening moves toward his mother at the time of the shooting, or that he was even standing within stabbing distance of her. While it is clear that Antone was restricting his mother's movements before the police entered, he had made no attempt to threaten or cut her with the knife, and Mrs. Samander had already indicated to the police that she was not hurt, (*see* Def.'s Ex. A at 19). As the Second

Circuit observed in *Warren v. Dwyer*, "[p]re-trial resolution of the defense [of qualified immunity], however, may be thwarted by a factual dispute or require further discovery." 906 F.2d at 74.

As the defendant presents the facts of this case in support of his motion for summary judgment it could be inferred that Antone posed a passive threat to the police officers. While the officers knew that he had a knife that he refused to relinquish and had recently used the knife to injure his father, and thus perceived Antone as a danger, defendant's factual submission does not demonstrate that no reasonable juror could fail to conclude that there was an immediate threat posed to the officers at the time of the shooting. While these facts may support the use of some level of force to subdue Antone, the Court cannot say on this record that it was objectively reasonable as a matter of law for the defendant to use deadly force.[1]

The same reasoning that leads the Court to conclude that this factual record does not support a finding of qualified immunity similarly dictates that the Court deny defendant's motion for summary judgment. If this record cannot support a finding that it was not objectively unreasonable for the defendant to use deadly force for the purposes of qualified immunity, then neither can the factual record support a finding of undisputed objective reasonableness of defendant's use of deadly force.

**Conclusion**

Accordingly, the defendant's motion for summary judgment [doc. # 28] is DENIED.

**IT IS SO ORDERED.**

---

1. As the Court previously noted, the plaintiff has submitted statements by defendant Flemmig stating that Antone was making knife throwing motions, and yelling and shouting prior to the shooting. While the plaintiff acknowledges the damaging nature of this statement to his case, the defendant has submitted a record presenting a factual scenario supporting the plaintiff's version of events, or at best conflicted as to the events. (*Compare* Def.'s Ex. A to Def.'s Ex. C, which present differing accounts of the events of the shooting). Inasmuch as the Court does not find that the defendant is entitled to qualified immunity on the record submitted by defendant, the two conflicting accounts would at most create a genuine issue of factual dispute. *See Bean v. City of Buffalo*, 1993 WL 152081 (W.D.N.Y. 1993) (differing accounts of decedent's behavior at time of use of deadly force creates genuine issue of material fact). Therefore, the Court accepts the events as submitted by the defendant for the purposes of defendant's motion for summary judgment.