**Jack DINEEN, as Executor of the Last Will and Testament of Edward J. Dineen, Plaintiff,**

v.

**Dennis J. STRAMKA, Defendant.**

**No. 00 CIV. 8262(WCC).**

United States District Court,
S.D. New York.

Oct. 30, 2002.

Besen and Trop, L.L.P., Attorneys for Plaintiff, Garden City, Robert E. Trop, Esq., Of Counsel.

Eliot Spitzer, Attorney General of the State of New York, Attorneys for Defendant, New York, Katherine Timon, Asst. Attorney General, Of Counsel.

## OPINION AND ORDER

CONNER, Senior District Judge.

Plaintiff Jack Dineen, as Executor of the Last Will and Testament of the estate of Edward J. Dineen ("Dineen"), deceased, brought this action pursuant to 42 U.S.C.

§ 1983, alleging that defendant Dennis J. Stramka violated Dineen's constitutional rights by the use of excessive force in apprehending Dineen. Plaintiff also asserted common law tort claims against defendant for negligence and wrongful death.

Defendant has moved for summary judgment dismissing plaintiff's claims on grounds that (1) defendant did not use excessive force, (2) defendant's actions are shielded by qualified immunity because his use of excessive force was "objectively reasonable" as a matter of law, (3) defendant's use of force was not negligent and (4) neither plaintiff nor distributees of decedent's estate have suffered pecuniary loss. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND

At the time of the incident giving rise to plaintiff's cause of action, Dineen was under the care of Drs. Burt and Young at Memorial Sloan–Kettering Hospital ("Memorial"), located in New York, New York for treatment of lung cancer. (Def. Mem. Supp. Summ. J., Ex. 7 at 2, 6–7, 51.) Dineen saw his family doctor for a persistent sore throat and was referred to Memorial where he was diagnosed with Stage IV lung cancer in April 1997. (*Id.* at 7.) Dineen was subsequently told that the cancer had metastasized into his spine, ribs and brain and that he had only a few months to live. Dineen informed his family of his illness in May or June 1997. (E. Abruzzo Dep. at 13.) Dineen died at Memorial on August 24, 1997 of metastatic lung cancer. (Def. Mem. Supp. Summ. J., Ex. 7 at 182.)

This claim arises out of the apprehension of Dineen during the evening hours of August 1, 1997 following a car chase involving defendant, a New York State Parks Police Officer and two Town of Tuxedo, New York patrol cars. (Stramka Aff.

¶¶ 5–17.) The pursuit stretched some distance along Route 106, in the Harriman Park area of Orange and Rockland Counties in the state of New York before defendant and Tuxedo officers terminated the chase by executing a "box-in" maneuver to stop Dineen's car. (*Id.* ¶¶ 20–24.)

On August 1, 1997 Dineen left his apartment in Manhattan at 11:00 a.m. to drive his car to Connecticut to meet a friend at 1:00 p.m. but never arrived at the appointment. (J. Dineen Dep. at 46.) That evening, a park visitor driving on Route 106 in Harriman State Park was run off the road by Dineen. (Stramka Aff. ¶¶ 5–13.) Shortly thereafter, the park visitor contacted New York State Parks Ranger Bruce Crowfut to complain of the erratic driver, describing the car, giving the license number and describing the driver as a young white male, skin-head. (*Id.* ¶¶ 1–11, 5–17, 20–24.) Shortly before 9:25 p.m. the Park Ranger radioed headquarters, advising the Parks Police of the report and relaying the description given by the park visitor. *Id.* The defendant then saw a vehicle matching the description and proceeded to intercept it. After identifying the license plate number as that given by headquarters, defendant turned on his flashing lights and sirens and directed the driver to pull over using the loudspeaker. The driver did not respond. (*Id.* ¶¶ 12–15.)

During the ensuing pursuit, defendant observed erratic driving with the driver crossing over from his lane into oncoming traffic several times. Defendant radioed the Parks Police dispatcher to advise the Town of Tuxedo Police Department that assistance was needed. Two Town of Tuxedo patrol cars, each with an officer, one of whom was Officer Patrick Welsh, responded to the scene. (*Id.* ¶¶ 18–20.) The driver continued down Route 106 driving erratically, at speeds varying from five miles

per hour to forty miles per hour, and neither stopped nor pulled over in response to defendant's lights, sirens or hails. Officer Welsh, at defendant's direction and with his assistance, attempted to execute a "box-in" maneuver to stop the driver's vehicle. When the vehicle was finally brought to a stop, the driver was identified as Edward Dineen. (*Id.* ¶¶ 16–24.)

The parties disagree over what happened next. Officer Welsh apparently noticed Dineen's vehicle rolling forward and attempted to stop it by opening the car door, placing the transmission in park and taking the keys out of the ignition. According to defendant, as Officer Welsh was between the steering wheel and the driver, defendant observed Dineen place one of his hands on Welsh's gun and the other hand on Welsh's gunbelt. (*Id.* ¶¶ 26–28.) Defendant grabbed Dineen's left hand off Welsh's gun and placed handcuffs on his left hand while Welsh grabbed Dineen's other hand or arm. Dineen was disoriented and combative and began to fall forward to the ground onto his knees until defendant and Officer Welsh guided him down to the ground on his stomach. (*Id.* ¶¶ 28–31.) Defendant claims that Dineen would not place his hands behind his back as directed, and flailed his arms, resisting being handcuffed. After Dineen was placed in the patrol car, he complained that the handcuffs were annoying him and defendant immediately took them off. (*Id.* ¶ 34.) Throughout the ordeal, Dineen's speech was slurred and he kept repeating, "I'm on medication." (Welsh Dep. at 20.) Defendant called his headquarters for an ambulance to be dispatched and an emergency medical technician ("EMT") arrived on the scene. The EMT examined Dineen and found him to be disoriented. An ambulance then took Dineen to Good Samaritan Hospital where he was diagnosed as having a spiral fracture of the humerus bone in his left upper arm. (Pl. Rule 56.1 Stmt. ¶ 68.)

Plaintiff presents a different version of the events occurring after Dineen's vehicle was stopped. According to plaintiff, Dineen never placed his hand on Welsh's gun. (Welsh Dep. at 52.) Plaintiff maintains that Dineen was dragged out of the car, beaten against the back of his knees with a night stick by defendant and thrown to the ground. (J. Abruzzo Dep. at 11; J. Dineen Dep. at 28; E. Abruzzo Dep. at 17–18; Murphy Dep. at 38, 62.) Contrary to defendant's account, plaintiff claims that Dineen was pleading with Stramka to loosen the handcuffs because they were hurting his arm but defendant refused. (E. Abruzzo Dep. at 17, 21.) According to plaintiff, defendant used excessive force in apprehending Dineen which resulted in bruises on the back side of both Dineen's knees as well as a bruise on his right forehead and a spiral fracture of the proximal left humerus. (E. Abruzzo Dep. at 45; Trop Aff. ¶ 11.)

Defendant suggests that Dineen's fracture occurred prior to the August 1, 1997 incident due to the metastatic cancer that had spread to the bone. (Def. Mem. Supp. Summ. J. at 21–22.) Similarly, defendant contends that the alleged bruise on Dineen's right forehead was actually a protruding tumor, a result of Dineen's spreading lung cancer. (*Id.* at 4.)

## DISCUSSION

### I. *Summary Judgment Standard*

Defendant moves for summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

## II. *Section 1983 Excessive Force Claim*

■ Defendant has raised two defenses to the excessive force claim: (1) the force used was not excessive; and (2) he is entitled to qualified immunity. In order to prevail on his excessive force claim, plaintiff must prove that the force used against Dineen was objectively unreasonable under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."). In *Graham* the Su-

preme Court announced that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.* at 396, 109 S.Ct. 1865. In evaluating the reasonableness of an officer's use of force, a court should consider the specific circumstances of the case, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Id.* at 396, 109 S.Ct. 1865. Following the precedent set forth in *Graham,* we believe that there is a genuine issue of material fact as to whether the circumstances surrounding the August 1, 1997 incident warranted the use of excessive force.

The only offense at issue was Dineen's erratic driving for which defendant issued three traffic summonses. Although it had menaced the safety of Dineen and other drivers, the threat ended when Dineen's vehicle was stopped. *See Samander v. Flemmig,* 20 F.Supp.2d 343, 346 (D.Conn. 1998) (finding that the severity of the crime at issue, a knifing attack, was indisputably serious). Moreover, there was no substantial danger to the safety of the officers.[1] Defendant states in his affidavit that Dineen "appeared to be elderly and ill ... and I thought he either missed his medication or taken too much of it." (Stramka Aff. ¶ 33.) Moreover, although Dineen did lead defendant on a chase, this record provides the Court with an insufficient factual basis for concluding that Dineen was actively resisting arrest. Defendant claims Dineen would not place his hands behind his back and resisted being handcuffed. (Stramka Aff. at 7.) However, once the officers stopped Dineen's vehicle,

---

**1.** Although defendant alleges that Dineen placed his hand on Officer Welsh's weapon, Officer Welsh admits that he never saw Dineen touch his gun. (Welsh Dep. at 52.)

Thus it remains an issue of fact for the jury and not the Court to evaluate in determining whether defendant's use of force was excessive.

there is nothing to indicate that Dineen presented a risk of escape or was about to break away from either defendant or Officer Welsh. Though Dineen may have been uncooperative, it appears that defendant and Officer Welsh were in control of the arrest. *See Flanigan v. Town of Colchester*, 171 F.Supp.2d 361, 365 (D.Vt.2001) (finding that defendant actively evaded officers' attempts to place him in protective custody where defendant broke free and headed towards his house).

In addition to our conclusion that there are material issues of fact as to whether defendant has satisfied the *Graham* standard, we note that plaintiff alleges a set of facts which, if proven, would permit a jury to find that defendant used excessive force in his apprehension of Dineen. It is undisputed that Dineen was diagnosed upon his arrival at Good Samaritan Hospital as having a spiral fracture of the humerus bone in his left upper arm. (Def. Rule 56.1 Stmt. ¶ 68.) Plaintiff claims this injury resulted from defendant's actions where he allegedly pulled Dineen from his vehicle and threw him to the ground. Defendant suggests that the fracture was pathologic in nature and occurred prior to the August 1, 1997 incident, the result of Dineen's lung cancer which had metastasized into his left humerus causing the bone to weaken and making it susceptible to fracture under slighter stress. (Simons Dep. at 35.)

Both parties present evidence to support their contentions. For example, defendant submits a radiology report containing the following findings: "There is an oblique fracture through the proximal left humeral shaft through an area of lucency suspicious for a pathologic fracture." Defendant also suggests that Dineen's disoriented state could have been the result of the cancer medication he was taking, rendering him unable to recall the exact events of August 1, 1997. Defendant further submits that Dineen could have bumped his left humerus against the car door, fracturing it, with the cancer medication concealing the pain. (*Id.* at 35.) Additionally, Officer Stramka testified that he did not believe that anything that occurred during the stop and seizure of Dineen could have caused the fracture of Dineen's arm. (Stramka Aff. ¶ 41.)

Contrary to defendant's account, Dineen's brother and sisters testified that Dineen stated during their hospital visits that he was dragged out of his car, thrown to the ground and placed in excessively restrictive handcuffs. (J. Dineen Dep. at 28; E. Abruzzo Dep. at 17–18; Murphy Dep. at 38, 62.) Defendant argues that the testimony of Dineen's relatives regarding the events of August 1, 1997 is inadmissible hearsay. However, their testimony as to what Dineen reported to them may be admissible under the hearsay exception allowing for testimony as to Dineen's existing state of mind, emotion, sensation and physical condition. *See* FED. R. EVID. 803(3); *Haywood v. Hudson*, No. CV–90–3287, 1993 WL 150317, at *5 (E.D.N.Y. Apr. 23, 1993). Moreover, there is nonhearsay evidence before us, supporting plaintiff's claims. Dr. David Simons, the doctor who treated Dineen on the night of the incident at Good Samaritan Hospital and who diagnosed him with a fractured humerus, testified that the X-ray films did not indicate any pathology in Dineen's humerus. Dr. Simons also indicated that a radiologist made an official reading of the films and did not specify any pathology. (Simons Dep. at 14–15.)

The parties are also in disagreement as to the cause of the "red mark" located on Dineen's right forehead as well as the black and blue marks on the back of Dineen's legs. Plaintiff points to Dr. Simons's deposition where he testifies to his observations of the mark: "... it was as if there was some, like a kid falls down and

scrapes the knee now," arguing that the mark resulted from Dineen being thrown to the ground. (*Id.* at 20.) Defendant claims that the "red mark" was actually a protruding tumor, existing prior to the August 1, 1997 incident. (Def. Mem. Supp. Summ. J. at 4.) In support of his claim that defendant struck Dineen against the back of his knees with a night stick, plaintiff directs the Court's attention to Dineen's sister's deposition. Ms. Frances Murphy testifies that Dineen stated to her that he was hit in the back of the legs by a bar and that she observed black and blue, yellow, purplish marks on the back of both of Dineen's knees. (Murphy Dep. at 43, 45.) It is for a jury to determine which of these conflicting accounts concerning the cause of Dineen's fracture and bruises are to be believed. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) (affirming denial of summary judgment when parties provided conflicting accounts of the events that led up to the plaintiff's claim of excessive force). For the purposes of this motion however, we conclude that plaintiff's assertions of excessive force, taken together are sufficient to prevent summary judgment on plaintiff's § 1983 claim for excessive force. *See Id.* at 923–24.[2]

### III. *Qualified Immunity*

▉ As a general rule, law enforcement officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). There can be no dispute that freedom from the use of excessive force is a clearly established constitutional right. The issue is whether it was objectively reasonable for defendant to believe that his acts did not violate Dineen's constitutional right to be free from the use of excessive force. Although this inquiry requires a focus on the particular facts of the case, in *Robison,* the Second Circuit held that a defendant is entitled to summary judgment on qualified immunity grounds when

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for defendant[ ] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

821 F.2d at 921.

As noted above, the constitutionality of the use of force by law enforcement officials under the Fourth Amendment is assessed under a standard of objective reasonableness. *Graham,* 490 U.S. at 388, 109 S.Ct. 1865. The Court has already determined that whether defendant's use of force was reasonable was a material issue of fact for a jury to decide. Accordingly, we reach the same conclusion as to the second qualified immunity inquiry—that is, whether defendant could reasonably have believed that he was acting in a fashion that did not clearly violate Dineen's constitutional right to be free from the use of excessive force.

▉ Defendant argues that "it was objectively reasonable for defendant to believe that his actions in removing Dineen from his vehicle did not violate clearly established federal law" in light of Di-

---

**2.** Plaintiff testified that the officer "pushed" her against the inside of the door of her car, "yanked" her out, "threw [her] up against the fender," and "twisted [her] arm behind [her] back." Robinson testified that she suffered bruises lasting a "couple weeks." The Second Circuit held that "assertions such as these are sufficient to prevent the summary dismissal of a § 1983 claim for excessive force."

neen's failure to pull his car over and his attempt to seize Officer Welsh's gun. (Def. Mem. Supp. Summ. J. at 24.) Although an officer is entitled to the use of *some* degree of force when confronted with one who threatens the officer or attempts to resist arrest, it does not give the officer license to use force without limit. *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir.2000). Rather, the force used by the officer "must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 166. Even if we were to assume that defendant was entitled to use force in apprehending Dineen, taking the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant exceeded the tolerable limit of such force. Thus, summary judgment for the defendant on the grounds that he is qualifiedly immune from suit must be denied.

## IV. *Negligence and Wrongful Death Claims*

We note at the outset that plaintiff does not address these claims in its opposition papers, enabling the Court to conclude that it has abandoned them. *Singleton v. City of Newburgh*, 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (Conner, J.) (plaintiff's claim deemed "abandoned" and defendants' summary judgment granted where claim was alleged in the complaint but "not raised elsewhere in the record"); *Anti–Monopoly, Inc., v. Hasbro, Inc.*, 958 F.Supp. 895, 907 (S.D.N.Y.1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir.1997). Despite plaintiff's silence in these matters, we will discuss the merits of plaintiff's negligence and wrongful death claims.

■ With respect to plaintiff's negligence cause of action, we must grant defendant's motion for summary judgment.

When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie. *See Mazurkiewicz v. New York City Transit Auth.*, 810 F.Supp. 563, 570–71 (S.D.N.Y.1993) (holding that "[p]laintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff"); *Universal Calvary Church v. City of New York*, No. 96 Civ. 4606, 2000 WL 1745048, at *12 (S.D.N.Y. Nov. 28, 2000). In his complaint, plaintiff alleges that "the force and assault committed by the defendant was excessive, unnecessary to maintain order, unwarranted, unjustified, without cause, willful, wanton, malicious, intentional, and with clear intent to deprive decedent of his rights, privileges, and immunities secured to him under the Constitution..." (Complt.¶ 25.) Since plaintiff's claims against defendant are premised on intentional conduct, defendant's claim for negligence must be dismissed.

■ Plaintiff's wrongful death claim must also be dismissed because he has failed to allege a sufficient causal or proximate nexus between any action by the defendant and the death of Dineen. *See Thompson v. Vacco*, No. 96 Civ. 8670, 1997 WL 539949, at *6 (S.D.N.Y. Aug.29, 1997); *Chong v. New York City Transit Authority*, 83 A.D.2d 546, 441 N.Y.S.2d 24, 25 (2d Dep't 1981) (one of the elements of a wrongful death action is the showing of a "wrongful act, neglect or default of the defendant by which the decedent's death was caused."). Plaintiff merely alleges that the injuries sustained by Dineen resulted in a shortening of his life. (Complt. ¶ 20.) However, plaintiff offers no support in the form of medical evidence or other-

wise to support this allegation. Rather, it appears based on the record before the Court, that Dineen died as a result of the lung cancer with which he was diagnosed in April 1997. (Def. Mem. Supp. Summ. J., Ex. 7 at 7.) Upon diagnosis, Dineen was informed that he had only a few months to live. (*Id.* at 51–52, 54–55; Murphy Dep. at 33.) Dineen subsequently died four months later on August 24, 1997 of metastatic lung cancer which had invaded his spine, ribs and brain. (Def. Mem. Supp. Summ. J., Ex. 7 at 182.[3]) Because plaintiff has failed to offer any evidence to show that defendant's actions caused Dineen's death, his wrongful death claim must be dismissed. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548 (when a party who has the burden of proof at trial, fails to establish an essential element of its cause of action after adequate time for discovery, summary judgment must be granted).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment with respect to plaintiff's state law claims of negligence and wrongful death is granted. Because there remain genuine issues of material fact as to plaintiff's excessive force claim and whether defendant is qualifiedly immune from suit, we deny defendant's motion for summary judgment on these claims.

SO ORDERED.

---

**3.** At the time of Dineen's death, an orthopedic evaluation actually indicated that the fracture of the left humerus was healing. (*Id.*)