Carmen SANTIAGO, Plaintiff,

v.

The NEWBURGH ENLARGED CITY SCHOOL DISTRICT, et al., Defendants.

No. 05 Civ. 10731(CM).

United States District Court, S.D. New York.

April 5, 2007.

Rudolph Silas, Rudolph Silas, Attorney, Brooklyn, NY, for Plaintiff.

Mark Craig Rushfield Shaw & Perelson, LLP, Highland, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE COMPLAINT

McMAHON, District Judge.

Plaintiff Carmen Santiago, a typist with the Newburgh Enlarged City School District, sued her former employer after she was terminated pursuant to New York Civil Service Law Section 71 for failing to report to work for more than one year by reason of disability resulting from an occupational injury. The termination took place on October 26, 2004.

On July 20, 2005—267 days after her termination—plaintiff filed a notice of

charge of discrimination and a charge of discrimination against defendants.

On December 22, 2005, having received a right to sue letter, plaintiff brought an action asserting nine federal and state claims for relief. Plaintiff's state law claims under the New York State Human Rights Law (Fourth, Fifth and Sixth Causes of Action), her claim for denial of due process in connection with her dismissal (Eighth Cause of Action) and her husband's claim for loss of consortium (Ninth Cause of Action) were dismissed in a decision dated May 16, 2006. Familiarity with that decision is presumed.

Defendants now move for summary judgment dismissing plaintiff's remaining claims. The motion is granted.[1]

**Standards for Summary Judgment**

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industries Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

In this district, we have adopted a local rule, Rule 56. 1, to assist courts in determining whether there exist any disputed issues of material fact. This rule requires a party moving for summary judgment to file a Statement of Undisputed Facts, with each fact set forth in a separately numbered paragraph, containing citations to admissible evidence to establish the asserted fact. The party opposing summary judgment must submit a responsive statement containing correspondingly numbered paragraphs that either admit the asserted fact or controvert the fact and cite to admissible evidence that controverts the fact. The non-moving party is free to submit its own counter-statement of material facts, but is not thereby relieved of filing a response to the movant's

---

**1.** There are two named defendants—the Newburgh Enlarged City School District and Newburgh Free Academy, which is the school where plaintiff was employed. The only proper defendant is the District.

Rule 56.1 Statement in the form specified in the rule.

■ In this case, plaintiff's counsel, in opposing the motion, failed to respond to paragraph 17–19, 1, 12, 34–40, 52, 60, 64, 68, 73, 74, 80, 81, 84–49, 94–97, 99–103 and 106–123 in Defendants' Rule 56.1 statement. Those assertions are assumed to be true for purposes of this motion.[2]

## The Charge

A copy of the plaintiff's EEOC charge was not submitted with the defendant's original motion papers but was provided by defendant in response to the court's request (it has previously been marked as deposition exhibit HHH).[3] The charge was executed by plaintiff on May 23, 2005. Plaintiff alleges that it was filed on May 24, 2005. It is stamped "received" by the EEOC on what appears to be June 9, 2005. For purposes of this motion, I will use May 24 as the date of filing of the EEOC charge.[4]

The charge alleges discrimination based on race and disability. It also alleges retaliation. It does not allege discrimination based on sex/gender.

The charge alleges that plaintiff was:

1. denied benefits afforded to other similarly situated white employees (specifically, compensation for "out of title" work and a parking spot in a desirable area);

2. required to perform tasks that other similarly situated white employees were not required to perform (identified as translating, which was out of title work);

3. terminated due to her inability to perform tasks that white employees were not required to do;

4. subjected to unspecified harassment, unlike white employees.

## Statute of Limitations Applicable to this Case

In this dual filing state, the statute of limitations extends back 300 days from the filing of the charge. Deeming the charge filed on May 24, 2005 means that claims relating to discrete acts of discrimination that occurred prior to July 27, 2004 are time barred.

■ Very few acts qualify as continuing violations, so as to trigger a continuous tolling of the statute of limitations. However, in a hostile work environment case, acts outside the 300 day limit that contribute to an ongoing hostile work environment are actionable under a continuing violation theory. *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As will be seen below, in this case the *Morgan* doctrine does not resurrect any otherwise time-barred claims.

Although this case turns largely, if not exclusively, on the effects of an injury suffered by plaintiff at work, which thereafter interfered with her ability to do her job, plaintiff asserts no claim in her complaint pursuant to the Americans with Disabilities Act.

---

2. Plaintiff's counsel is a repeat violator of this rule, and so he should not be surprised that this court is exercising its discretion in favor of literal enforcement of the rule. See Defendants' Reply Br. at 5, and cases cited.

3. All other citations to defendants' exhibits refer to the exhibits as marked for purposes of this Rule 56.1 motion.

4. In my earlier opinion I used a filing date of July 20, 2005, based on material in the pleadings. Nothing in that opinion turned on the statute of limitations, and both parties agree that the charge was in fact filed about two months prior to that date.

## Undisputed Facts

The reader is referred to this court's May 16, 2006 opinion, familiarity with which is assumed. None of the material facts recited therein appears to have changed after discovery.[5]

Briefly, the following facts are undisputed (or, if disputed, are recited in the light most favorable to the plaintiff):

Plaintiff was originally employed by the defendant District as a teacher's aide in 1990. In 2000, she became a typist, assigned to the Newburgh Free Academy ("NFA"). Although classified as a typist, plaintiff was from time to time asked to perform services as an interpreter for non-English speaking parents. She received no additional compensation for this work. In June 2002 plaintiff and two other bilingual District employees complained about this to their union. Plaintiff was advised by her union representative that she should not have to perform bilingual duties and that she could complain of the situation if she wished. She never filed a grievance or otherwise notified the District administrators that she felt aggrieved about the situation.

From time to time in 2001 and 2003, plaintiff acted as Office Manager during the absence of the regular Office Manager. She did receive out of title pay on those occasions.

In 2002, plaintiff complained to her supervisor that she had not been given main parking plaza privileges, like other employees in the main office. She also had a conversation with the Senior Office Manager in which the Office Manager allegedly said that it was rude for plaintiff to speak in Spanish to co-employees in front of people who did not understand Spanish. Plaintiff felt aggrieved by this conversation, although she testified that she could not recall whether the Office Manager prohibited her from speaking Spanish in the main office. (Pl. EBT at 133–141).

On or about July 5, 2002, a ceiling tile fell from the ceiling of the main office at the NFA and struck plaintiff on her right (dominant) arm. A doctor's note obtained by plaintiff on October 28, 2002 stated that plaintiff could perform "Light duty, no repetitive motions, no heavy lifting." (DX P). Plaintiff worked throughout the 2002–03 school year with certain informal restrictions that were devised by her supervisor (the Office Manager) and a co-worker, Ms. Leon, without any input from the Human Resources Department. She limited her typing to two or three hours per day; she did not engage in heavy lifting; and she would cover the switchboard while the switchboard operator did the repetitive activity of placing bulletins or mail in interoffice mailboxes. When Leon was out of the office, plaintiff was expected to perform her usual job duties, but she was often unable to do so, which meant that her supervisor had to cover the mail-related duties—a situation that did not sit well with the Office Manager.

---

5. This court's prior decision indicated that plaintiff's EEOC charge complained of discrimination on the ground of race and gender, and the complaint appears to so state. The facts recited in that decision were based on the allegations of the complaint. In connection with this motion, the court has obtained a copy of the EEOC charge, and it clearly alleges discrimination based on race, disability and retaliation. No claim of gender discrimination was exhausted administratively, so none can be pursued here. *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332–33 (2d Cir. 1992); *Kirkland v. Bianco*, 595 F.Supp. 797, 799 (S.D.N.Y.1984). The references in the complaint to discrimination on the basis that plaintiff is a "hispanic female" are deemed amended to delete any charge of gender-based discrimination. The complaint filed with this court does not claim disability discrimination.

Plaintiff had shoulder surgery on July 13, 2003. She did not work from that day until the day she was fired over fifteen months later.

On July 22, plaintiff caused her physician, Dr. Magill, to send the District a letter indicating that she was "totally disabled." (DX Q). She was on Workers' Compensation for the post-surgical period.

On October 27, 2003, plaintiff was given a doctor's note authorizing her to return to work. The note indicated that she could perform "light duty." When the Executive Director of Human Resources asked what that meant, the doctor replied, in a letter dated October 29, "no heavy lifting or repetitive activities." (DX U, V). Executive Director Leimer, the District official responsible for deciding whether employees could return to work with restrictions, looked at the job duties for plaintiff's position as a typist to determine whether the requested restriction would affect an essential function of plaintiff's job. (Leimer EBT at 14–21, 24–25 and 162). Leimer concluded that two of plaintiff's essential functions—typing and placing mail and bulletins in interoffice mail boxes—involved repetitive activity. She also concluded that plaintiff's job involved heavy lifting. She decided that it would be possible to accommodate plaintiff's inability to do heavy lifting, but that it would not be possible to accommodate her inability to type or place the mail in the boxes. Therefore, Leimer sent plaintiff a letter, dated October 30, 2003, advising her that repetitive activities were an essential function of her position as typist and so could not be accommodated. (DX W).

Plaintiff sent a memo to Leimer dated November 2, 2003, complaining about Leimer's decision and insisting that all she

wanted was to perform the same tasks she had been performing pursuant to her informal accommodation with her supervisor and co-worker. (DX X) This did not change Leimer's mind, because she had concluded that, if plaintiff could not engage in repetitive activity, she could not perform the duties of a typist. Dr. Magill, in a letter dated December 8, 2003, confirmed that plaintiff could not return to "full duty," (DX Y). Plaintiff's own deposition testimony confirmed Dr. Magill's assessment. Indeed, plaintiff testified that after her surgery, she could not type, sort and distribute mail and bulletins, and could not return to her job on a "regular" basis. (Def. Rule 56.1 Statement at ¶ 94). And her primary care physician, Dr. Cowen, never wavered in his conclusion that plaintiff was totally disabled from performing the work of a secretary following her July 2003 surgery. (*Id.* at ¶ 95).[6]

On March 23, 2004, Leimer told plaintiff to provide an updated doctor's note by April 1, 2004, indicating her expected date of return, or she would be deemed to have abandoned her position. (DX Z). Plaintiff caused Dr. Magill to send a letter dated March 31, 2004, which indicated that she could return to work on light duty with no heavy lifting. There was no reference in the letter to any restriction on engaging in repetitive activity. (DX AA).

After receiving the March 31 letter, Leimer authorized plaintiff's return to work as a typist, with a restriction of no heavy lifting, effective April 22, 2004. (DX BB; Pl.Ex. 18, 22). However, the doctor had mistakenly left the "no repetitive activities" restriction out of his March 31 letter (Def. Rule 56.1 Statement at ¶ 99). Plaintiff, by her own admission, was still

**6.** Both of these Rule 56.1 statements are deemed admitted because they were not prop- erly controverted by plaintiff.

unable to type. (Pl. EBT at 323–324). She obtained a doctor's note from Dr. Victor Khabie of Somers Orthopaedic Surgery and Sports Medicine Group, dated April 12, 2004, indicating that she was awaiting authorization for further surgery and would not return to work "until further notice." (De.Ex.CC). She had rotator cuff surgery on July 16, 2004, and Dr. Khabie indicated that she would be out of work for two to four weeks thereafter. (DX EE).

The operation did not cure her problem. She did not return to work following the surgery. Instead, she provided Leimer with a note from Dr. Khabie indicating that she was "totally disabled." (DX FF). According to plaintiff, she was totally disabled from work from at least April 12, 2004 through August 31, 2004.

The District, as was required by law, had held plaintiff's job open pending her return. By September 2004, the principal at NFA, Principal Copeletti, wanted to staff the position permanently. Since plaintiff had been out of work for more than one year, and since her most recent medical evaluation suggested that her return to work was not imminent, the District, invoking Section 71 of the New York Civil Service Law, directed plaintiff to show cause whether she could perform her job, or she would be fired. (DX GG). Plaintiff did not respond to the District's show cause letter, and she was fired by resolution of the Board of Education at its meeting on October 26, 2004. (DX HH).

On October 18, 2004, Dr. Khabie prepared a note that was never sent to the District. The note indicated that plaintiff was unable to type. (DX II) Plaintiff herself testified that, as of October 18, 2004, she could not type even for one to three hours a day, as she had during the period prior to her first operation, when she was on light duty status. (Pl. EBT at 349).

Plaintiff filed an application for disability benefits. In that application, she represented that she was totally disabled and could not work. She claimed that her disability dated from July 2003. The Social Security Administration granted her application (on appeal from an adverse finding), and specifically found that plaintiff had been disabled since July 14, 2003. (DX OO). Plaintiff herself testified that the SSA's findings—including its finding that she "is unable to lift or carry any significant amount of weight and she cannot sit, stand or walk for any period of time" (*Id.*)—are accurate. (Pl. EBT at 283).

## Plaintiff's Remaining Claims Must Be Dismissed

Plaintiff alleges that defendants discriminated against her by creating a hostile work environment (First Cause of Action), by subjecting her to discriminatory and disparate treatment (Second Cause of Action), and by dismissing her from her employment in retaliation for complaining about discrimination against Hispanic employees (Third Cause of Action). Plaintiff also claims in her complaint that she was fired in retaliation for exercising her First Amendment right of free speech. (Seventh Cause of Action).

*Race Discrimination—Hostile Work Environment (First Cause of Action)*

Title VII provides that "It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race ..." 42 U.S.C. § 2000e–2(a). The phrase "terms, conditions, or privileges of employment" is broad enough to render actionable an employer's requirement that an employee work in a discriminatory, hos-

tile or abusive environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Gregory v. Daly,* 243 F.3d 687, 691 (2d. Cir.2001).

■ "When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotations omitted). In order to prevail on a hostile work environment claim, a plaintiff must establish two elements: 1) a hostile work environment; and 2) a specific basis for imputing the conduct that created the hostile environment to the employer. See *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 62 (2d Cir.1998); *Gallagher v. Delaney,* 139 F.3d 338, 347–48 (2d. Cir.1998).

■ In this case, it is undisputed that plaintiff was not present in the workplace during the 300 days prior to the filing of the charge.[7] She ceased working on or about July 10, 2003 and never returned to work. Instead, she attempted to persuade the defendant District that she was either totally disabled or that she required significant accommodations in order to return to her job on some sort of light duty status.

Plaintiff did not even return to work after the District issued a Personnel Change Report authorizing her to return

to work effective April 22, 2004.[8] Plaintiff claims that she did not receive the letter of authorization that was mailed to her, but even assuming that to be true for purposes of this motion, it is of no moment. The only relevant fact for our purposes is whether plaintiff was in the workplace during the 300 day period prior to her filing of the charge (i.e., at any time on or after July 27, 2004). It is undisputed that she was not. She thus has no viable claim for the creation of a "hostile work environment" during that period. Lacking any claim for a hostile work environment created during the limitations period, plaintiff has no way to revive her claims of "hostile work environment" allegedly dating back to the year 2000. *Patterson v. County of Oneida,* 375 F.3d 206, 220 (2d Cir.2004).[9]

Defendants are entitled to summary judgment dismissing plaintiff's First Cause of Action.

*Race Discrimination—Disparate Treatment (Second Cause of Action)*

■ Because the hostile work environment doctrine cannot be used to revive stale claims for discrete acts of discrimination allegedly occurring prior to July 26, 2004, plaintiff's claims for race discrimination arising out of her employer's alleged failure to compensate her for performing out-of-title job duties and its refusal, in 2003, to authorize her to return to work in a light duty status following her first surgery (see Cplt. ¶ 33) are also time barred.

---

7. Perhaps because this is indisputably true, plaintiff did not even bother to respond to defendant's argument on this point.

8. The District did this because it received a note from plaintiff's physician authorizing a return to work with "no heavy lifting," but without any restriction on repetitive activity. This note, it appears, was incorrect. See below and Def. Rule 56.1 Statement at ¶ 99—a paragraph deemed admitted because plaintiff failed to controvert it properly.

9. Defendant also claims that plaintiff did not administratively exhaust her hostile work environment claim, but it is not necessary to reach this issue, as the undisputed facts establish beyond peradventure that any hostile work environment claim plaintiff might assert is time barred. Nor is it necessary to discuss what appears to be a conspicuous lack of evidence of the sort that normally qualifies as creating a "hostile work environment."

These discrete actions took place more than 300 days prior to the filing of plaintiff's EEOC charge. This leaves plaintiff with only one timely claim: that her dismissal was engineered on account of her race, so that she could be replaced with a white employee.

■ *Return to Work:* With regard to the District's refusal to permit plaintiff to return to work on light duty status, the court finds as follows. The rejection of a proposed accommodation is a single completed action; an employer's rejection of an employee's proposed accommodation does not give rise to a continuing violation. The District sent plaintiff a letter on October 30, 2003. The letter said that, because her physician had concluded that plaintiff could not engage in any *repetitive activity.* Plaintiff's job was as a typist. Typing is by definition an essential function of a typist's job. And the District concluded, not at all unreasonably, that typing was a repetitive activity. Therefore, it refused to permit plaintiff to return to work because she could not do her job.

If plaintiff believed that the District reached this conclusion because she was Hispanic,[10] rather than because she could not perform a repetitive activity like typing, she needed to file a charge no later than 300 days after October 30, 2003, or by April 29, 2004. She did not do so. She is, therefore, barred from complaining about this determination, even though she continued to feel its effects into the limitations period. *Elmenayer v. ABF Freight System,* 318 F.3d 130, 134–35 (2d Cir.2003).

Even if this were a timely claim, there is absolutely no evidence in the record to support plaintiff's contention that she was denied the right to return to work without doing any heavy lifting because she was

Hispanic. Indeed, plaintiff cannot even make out a prima facie case in that regard. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The undisputed evidence shows that plaintiff was not qualified to return to her position as a typist because, from the time she went out on disability, her physicians insisted that she could not perform any repetitive motion activity.

During this entire period, defendant received only one indication that plaintiff could type—a letter dated March 31, 2004 from a Dr. Magill, which stated that, "Plaintiff may return to work on light duty with no heavy lifting." There was no reference in this letter to any restriction on repetitive activities. As a result, defendant authorized plaintiff to return to work without having to perform any heavy lifting activities (see above). However, plaintiff has not specifically controverted ¶ 99 of Defendant's Rule 56.1 Statement, which says, "The omission of the words 'no repetitive activities' from Dr. Magill's letter of March 31, 2004 *was a mistake;* the plaintiff continued to be unable to engage in repetitive activities on March 31, 2004 and continuously thereafter." (Citing to plaintiff's deposition testimony at 272–75 and 320–21)(emphasis added). The court deems that fact admitted. Moreover, plaintiff testified that she could not type from and after the date of her first operation, even for short periods of time. (See *supra.*)

Typing is unquestionably a repetitive motion activity. Therefore, at no time during the period beginning with her first operation in July 2003 was plaintiff qualified for the position of typist, which was her job. Under the *McDonnell Douglas*

---

**10.** Again, I make no reference to plaintiff's status as a Hispanic woman, because her EEOC charge did not allege sex discrimination.

formulation, a plaintiff must demonstrate that she was "otherwise qualified for her position" in order to make out a prima facie case. Plaintiff has failed to do so.

*Out of Duty Tasks:* Similarly, claims that plaintiff and other Hispanic female employees were made to perform additional tasks (translating for Spanish-speaking parents) for no additional compensation (a matter that was being handled by her union under its collective bargaining agreement) are time barred, because these allegations date from August 31, 2000 until the date when plaintiff ceased working in July 2003. Obviously, plaintiff was not forced to perform additional duties when she was out of work; she was not performing any duties at all. Therefore, she has no timely claim in this regard.

■ *Dismissal:* It is undisputed that plaintiff's dismissal occurred within 300 days of the filing of plaintiff's charge. Plaintiff was terminated on October 26, 2004, pursuant to a process that began when a notice was sent to plaintiff on September 13, 2004. At that point, plaintiff had been out of work for more than one year, allegedly because of a disability that resulted from a work-related incident in 2002, when a piece of ceiling tile fell on her and injured her shoulder. The dismissal process, which was effected pursuant to New York Civil Service Law Section 71, commenced almost immediately after plaintiff presented the defendant District with a note from her physician, dated August 31, 2004, which stated that plaintiff was "totally disabled from work." Plaintiff herself testified, at page 326 of her deposition, that she was totally disabled between April 12, 2004 (when she had a second surgery on her shoulder) until the doctor sent the August 31, 2004 note.

Section 71 of the Civil Service Law permits municipal employers to fire civil service workers who have been out of work for more than a year following an on-the-job injury, as long as they follow certain procedures. There is no dispute that the procedures mandated by law were followed in plaintiff's case.

Plaintiff alleges that she was only out of work for more than a year because the District refused to accommodate her by permitting her to return to work on light duty status after her first surgery. She claims that, by the time the District had agreed to let plaintiff return to work on light duty status (because of the mistaken doctor's note that did not include a "no repetitive activity" restriction), plaintiff she had decided to have a second operation, in the hope that more surgery would permit her to return to work without restrictions. This, she alleges, is what occasioned her absence for a period long enough to permit the District to discharge her under Civil Service Law Section 71. Plaintiff in essence alleges that the District refused to accommodate her disability in the hope that this would force plaintiff to miss enough work so that she could be discharged. She thus contends that the District's reliance on Section 71 was a pretext for discrimination.

The principal problem with plaintiff's argument is that she never gets to the question of pretext. For the reasons discussed in detail above, plaintiff cannot make out a prima facie case of discrimination, because it is undisputed that *she was a typist but she could not type.* Her own doctor said so, in a note dated October 18, 2004, only a week before she was discharged. Plaintiff herself testified, under oath, that this note was factually accurate, and that she could not even type from one to three hours per day, which she had been able to do prior to having her first operation in July 2003. (Pl. EBT at 347–49). In order to make out a prima facie case, a plaintiff must, *inter alia,* establish that she was qualified for

her position. A person who cannot type is not qualified to be a typist.

The second problem is that there is no evidence in the record tending to show that anyone involved in plaintiff's termination wanted to discharge plaintiff (let alone that these administrators engaged in a nefarious scheme to keep plaintiff out of work for a year so that she could be discharged) *because she was Hispanic.* Plaintiff does not point to a scintilla of evidence that would tend to support her far-fetched theory. There is simply no evidence in the record that plaintiff's race was a factor in the decision to dismiss her at all. The fact that plaintiff is Hispanic, without more, does not enable her to withstand a motion for summary judgment. *See generally Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

For the above reasons, defendants are entitled to summary judgment dismissing plaintiff's Second Cause of Action.

### Retaliation

In her Seventh Cause of Action, plaintiff alleges that she was fired in retaliation for making complaints to her supervisor about what the complaint describes as "defendants' illegal action." During discovery, plaintiff identified various aspects of her job that she thought were discriminatory: the refusal to give her a parking space in a preferred location, the fact that she was asked to cover the switchboard too often, being questioned about the items missing from the safe. She admits that she complained about these matters. In her complaint, plaintiff alleges (or appears to allege) that she was fired in retaliation for making these complaints, which she claims constitute speech protected by the First Amendment to the United States Constitution.

 Defendant is entitled to summary judgment on this claim, not only because plaintiff has abandoned this claim by failing to respond to defendants' motion to dismiss it, *Dineen v. Stramka,* 228 F.Supp.2d 447, 454 (S.D.N.Y.2002); *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.2003), but also because it is clear that complaints about one's working conditions are a personal grievance, not a matter of public concern protected by the First Amendment. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).[11]

In her Third Cause of Action, plaintiff alleges that she was fired in retaliation for complaining about discrimination against Hispanics in her workplace, in violation of Title VII. Plaintiff has also not responded to defendant's argument that these retaliation claims should be dismissed, and so has abandoned them. *See cases cited above.* Defendants can be granted summary judgment on that basis alone.

 But defendants are entitled to dismissal of these claims on the merits, because no reasonable finder of fact could conclude on this record that plaintiff was fired because she complained about anti-Hispanic activity in the workplace. There is simply no evidence in the record that anyone who was involved in assessing whether plaintiff was able to return to work or in effecting her termination was motivated in the slightest by plaintiff's complaints of discrimination against Hispanics. In fact, there is no evidence in the record that the person who secured plaintiff's termination, Human Resources Executive Director Leimer, was aware of plain-

---

**11.** Whether speech is protected by the First Amendment is a question of law for the Court to decide. *Ezekwo v. NYC Health & Hospitals* *Corporation,* 940 F.2d 775, 780, *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991).

tiff's various complaints about parking spaces and out of title work assignments. Leimer was of course aware that plaintiff complained of Leimer's decision that she could not return to work as a typist while she had a "no repetitive activities" restriction. But, as noted earlier, nothing in the record ties that action to plaintiffs race, so her complaint cannot reasonably be construed as a complaint about discrimination against Hispanics. Finally, the evidence shows that Leimer received plaintiff's complaint about Leimer's refusal to let her return to work on or about November 2, 2003—nearly a year before plaintiff was fired. The gap of ten months between the receipt of plaintiffs complaint and the institution of Section 71 proceedings negates any inference that the former caused the latter. *Burkybile v. Board of Education,* 411 F.3d 306, 314 (2d Cir.2005).

Defendants are entitled to summary judgment dismissing the Third and Seventh Causes of Action.

### Conclusion

Defendants' motion for summary judgment is granted in its entirety, and the complaint is dismissed. The Clerk of the Court shall enter judgment for defendants and close the file.