**Leon SMITH, Plaintiff–Appellee,**

v.

**Walter KIM, Defendant–Appellant,**

**Michael Yankowski, Defendant–Appellant.**

**No. 02–2102.**

United States Court of Appeals, Sixth Circuit.

July 17, 2003.

Before MARTIN, Chief Circuit Judge, KRUPANKSY and COLE, Circuit Judges.

PER CURIAM.

Defendants Walter Kim and Michael Yankowski appeal the denial of their motion for summary judgment in this case. Kim and Yankowski are Lansing police officers who claim they are entitled to qualified immunity in this suit filed by Leon Smith, who is asserting, among other things, a claim of excessive force under 42 U.S.C. § 1983. For the following reasons, we AFFIRM the judgment of the district court.

On July 27, 2001, Dana Wigton, a community mental health worker, obtained an order from the county probate court for the hospitalization of the plaintiff, Leon Smith. Smith is a paranoid schizophrenic who was under Wigton's treatment. Wigton took the order to the Lansing Police Department, where she spoke with a sergeant. She explained that Smith was not taking his medication, had threatened her, and had become a danger to himself and others. She further explained that he could be violent and "didn't like the police."

The sergeant informed Officer Yankowski of the court order to take Smith into custody for transport to a mental health evaluation. The sergeant conveyed Wigton's warnings about Smith's state of mind to Yankowski. Yankowski asked Officer Kim to assist him in taking Smith into custody, but he did not tell Kim any information about Smith's mental illness or proclivity to violence.

The two officers drove separately to Smith's home. Smith was sitting in the front yard with a few other men. There were other people nearby who saw the events that transpired. From this point on, however, the evidence is in some dispute as to what happened. The officers present one set of facts, while Smith, via his two neighbor-witnesses, presents another.

The officers' version of events begins with Smith standing up as the officers got out of their cruisers and began to approach. The officers observed that Smith kept his hand in his right pocket. The officers asked who lived there, and Smith responded it was his mother's house. The officers asked if he was Leon Smith, and he "grunted" in the affirmative. As the officers continued to approach Smith, Yankowski asked Smith to take his hand from his pocket. Initially Smith failed to comply, but he did eventually remove his hand.

The officers observed a small knife, with a blade about an inch and a half long, in Smith's right hand. Smith pointed the knife at Yankowski, and as the officers began to retreat, Smith lunged at Yankowski. The officers then backed further away from Smith, who picked up a brick and started running toward the officers with the brick over his head. The officers yelled for Smith to stop and drop the knife and brick, but he did not. Smith made a move as to throw the brick at Kim while he was between ten and twenty feet from the officer. Kim shot twice at Smith, striking him once. A knife and a brick were found next to Smith.

The witnesses' versions of events differ from the officers'. Loise Luster was standing in her driveway talking to her daughter when the events at issue transpired. Shyla Keys is the other witness, the young woman standing in Luster's yard. Luster was standing in her driveway when the two police cruisers arrived. Smith was sitting in the driveway of his mother's house with his brother and some other men. Luster had been talking across the fence with them. The officers approached the men, and Smith acknowledged that the home was his mother's, in a conversational tone. The officers told Smith that they had to take Smith into custody and said something about his medication. Smith "just jerked away." Both officers at this point pulled their guns. Smith and the officers were about four feet apart. Smith began to try to distance himself from the officers.

Luster was meanwhile pleading with the officers, shouting, "Don't shoot him. He has a problem .... his mother is in the house. Please talk to her." Luster claims she did not see anything in Smith's hand, and she continued to plead with the officers not to shoot. Luster says Smith retreated back to the fence and was shot

there. She never saw Smith make a threatening motion or have anything in his hand. She claims she never saw Smith do anything that put any of the bystanders or officers in fear for their lives. She claims Kim shot Smith while she was standing very close by; he fell into the fence when he collapsed.

Shyla Keys, a fourteen year-old neighbor, claims she observed the incident from the front yard of Luster's home. She says that Smith did pick up a brick and make a gesture at the officers, but he was about eighteen feet away from them at the time. At no time, she says, however, did Smith "run at, advance toward or move closer to the Lansing police officers before he was shot."

As a result of the shooting, Leon Smith spent nineteen weeks in the hospital recuperating from a gunshot wound to the abdomen. The local prosecutor charged Smith with assault with intent to do great bodily harm less than murder, but the judge found at the preliminary hearing that Smith lacked the requisite intent. Instead, the judge bound Smith over on the charge of felonious assault with a knife and a brick, finding probable cause on the issue.

The question presented by this case is a complex one. Excessive force cases, considered in the context of qualified immunity challenges, create a distinctive intersection of the laws. The Supreme Court recently held "that the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." *Saucier v. Katz*, 533 U.S. 194, 197, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The issue presented by this case regards the intersection of our jurisprudence on qualified immunity, on our appellate jurisdiction, and on excessive force.

Fortunately, this court has considered this intersection on several occasions. We turn for guidance to *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir.1998), which warned as a preliminary matter that "[q]ualified immunity in cases involving claims of deadly force is difficult to determine on summary judgment because liability turns upon the Fourth Amendment's reasonableness test." With that warning in mind, we seek to determine the appropriate outcome in this case.

The seminal case on deadly force is *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), in which the Supreme Court held that deadly force is inappropriate unless "it is necessary to prevent [ ] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. As we said in *Sova*, 142 F.3d at 903, quoting *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Fourth Amendment reasonableness inquiry

is an objective test, to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and making "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

The Supreme Court held in *Malley v. Briggs* that an officer, sued in a civil suit, will be entitled to immunity if reasonably competent officers could disagree as to the reasonableness of the defendant officer's response. 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). If a reasonably competent officer would not agree that the behavior was reasonable, however, then the defendant officer is not entitled to

qualified immunity. *Id.* We went on to explain the effect of this rule in *Sova,* 142 F.3d at 902–03:

> This Court has established that summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force. When "the legal question ... is completely dependent upon which view of the facts is accepted by the jury," the District Court cannot grant a defendant police officer immunity from a deadly force claim. *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir. 1989). This is because the reasonableness of the use of force is the linchpin of the case. If the jury determines the officer shot the suspect without a reasonable belief that he posed a significant threat of death or serious physical injury to the officer or others, then the officer's actions were legally unreasonable under the Fourth Amendment. *Id.* at 216. On the other hand, if the jury believes the officer's version of the facts and finds the officer's conduct was reasonable, then he will be entitled to qualified immunity. *Id.* Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability. *See Buckner v. Kilgore,* 36 F.3d 536, 540 (6th Cir.1994); *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994); *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993); *Washington v. Newsom,* 977 F.2d 991, 995–96 (6th Cir.1992); *Yates v. City of Cleveland,* 941 F.2d 444, 447 (6th Cir. 1991).

As Smith points out, should we hold that "material issues of fact precluded the grant of summary judgment based on qualified immunity on plaintiffs' excessive force claim, we [would be] without jurisdiction to review this issue." *Dickerson v. McClellan,* 101 F.3d 1151, 1164 (6th Cir. 1996). Thus the question before us today is whether material facts are actually in dispute. This inquiry must come before any substantive discussion of the objective reasonableness of the officers' actions.

Yankowski and Kim claim that the pertinent facts are not in dispute; the officers claim that it is undisputed that Smith was resisting arrest, Smith wielded dangerous weapons against the officers, and Kim reasonably feared for his safety and the safety of others. Smith, on the other hand, claims that the germane facts are in dispute, as evidenced by the differences between the testimony of the officers and the testimony of the plaintiff's witnesses. Smith says that to find the facts undisputed is to credit all of the testimony of the officers and none of the testimony of Loise Luster and the deposition of Shyla Keys. Luster claims that Smith never had a weapon and that he was retreating from the officers. Keys claims that Smith never advanced toward the officers in a menacing way.

We believe that the difference in the testimony of the officers' and that of Smith's witnesses as to Smith's behavior during the incident is material. At minimum, the difference in the evidence is germane to the ultimate question of the officers' objective reasonableness. The jury must be the arbiter of the credibility of the evidence. We refuse to make such a determination today.

Because we find that material facts are in dispute in this case, we hold that we have no jurisdiction to hear the appeal. For that reason, we do not reach the question of the objective reasonableness of the officers' behavior, nor do we reach the question of collateral estoppel on the issue of probable cause.

For the foregoing reasons, we AFFIRM the judgment of the district court.

KRUPANSKY, Circuit Judge, dissenting.

I must respectfully dissent from the majority opinion's determination that this court lacks appellate jurisdiction over the legal effect of the defendant officers' qualified immunity. Because the evidence, taken in a light most favorable to the plaintiff, did not prove a violation of clearly established law, the court should grant the officers' claim of qualified immunity. Pursuant to a review of the controlling precedent. I have concluded that the officers' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Because the doctrine of qualified immunity was available to the officers, I would reverse the district court's denial of summary judgment for the defendants and dismiss the plaintiff's claims with prejudice.

As the Supreme Court directed in *Harlow*, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is not a defense to liability; where it is applicable, its purpose is to shield the officer from suit altogether, saving him from the burdens of discovery and costs of trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Skousen v. Brighton High School*, 305 F.3d 520, 526 (6th Cir.2002).

As a threshold matter, the majority opinion has determined that this Court lacks jurisdiction to hear this appeal. Nevertheless, because qualified immunity is immunity from suit, and not merely from liability, denials of summary judgment on the basis of qualified immunity are categorized as collateral orders which are immediately appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to the extent they present issues of law separable from the merits yet potentially dispositive of a claim. *Mitchell v. Forsyth*, 472 U.S. at 526–28; *Mattox v. City of Forest Park*, 183 F.3d 515, 518–19 (6th Cir.1999). If the denial of summary judgment turns on the existence of a genuine issue of material fact, an interlocutory appeal is improper, and no jurisdiction lies with this court to hear the appeal. *Dickerson v. McClellan*, 101 F.3d 1151, 1156 (6th Cir.1996).

However, this court has jurisdiction to review an interlocutory appeal where, as in the instant case, the issue under review turned not on which facts the parties might be able to prove, but instead, on whether certain given facts reflected a violation of clearly existing legal precedent. *See Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999)(*en banc*) (noting that denials of summary judgment are appealable so long as "the issue on appeal is not what facts the parties may be able to prove, but whether the plaintiff's facts, taken at their best, show a violation of clearly established law"): *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir.1997) (observing "[t]he question whether the uncontested facts demonstrated a constitutional violation is a pure question of law-and one from which an immediate appeal can be taken where qualified immunity has been denied").

The Supreme Court announced in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), that a district court's denial of summary judgment was not subject to interlocutory review if the facts material to the defense were in dispute. The Sixth Circuit has recognized that under *Johnson*, "a defendant entitled to invoke a qualified-immunity defense,

may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Claybrook v. Birchwell,* 274 F.3d 1098, 1103 (6th Cir.2001) (*quoting Johnson,* 515 U.S. at 319–20).

Attendant upon these considerations, however, *Johnson*'s progeny has directed that the existence of any question of fact does not necessarily render nonapppealable a denial of summary judgment on the basis of qualified immunity. The Supreme Court immediately clarified *Johnson* in *Behrens v. Pelletier,* 516 U.S. 299, 312–14, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), observing that "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact, and Johnson surely does not mean that every such denial of summary judgment is nonappealable." *Behrens* went on to explain that.

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" . . . *Johnson* reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity . . . typically, the issue whether the federal right allegedly infringed was "clearly established[.]"

*Id.* at 313 (citations omitted).

In concert with *Behrens,* this Circuit has observed that a "district court's assertion that there were genuine issues of material fact does not, standing alone, destroy the appealability of a qualified immunity ruling." *Turner v. Scott,* 119 F.3d at 428; *see also Farm Labor Organizing Committee v. Ohio State Highway Patrol,* 308 F.3d 523, 531 n. 3 (6th Cir.2002) (noting the court would still have jurisdiction to decide the legal question of qualified immunity even if the parties were not in agreement on the facts, because "*Johnson* merely establishes that we lack jurisdiction over 'a portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial'"); *Claybrook v. Birchwell,* 274 F.3d at 1103 (recognizing that "[i]f the factual disputes the district court relied on in denying summary judgment are immaterial to the legal issues raised by the appeal, this court may exercise its jurisdiction"); *Scott v. Clay County Tennessee,* 205 F.3d 867, 874 (6th Cir.2000) (finding that "a district court's dismissal of a civil rights defendant's summary disposition application *anchored in qualified immunity* will be immediately appealable if no predicate finding of an essential material fact remains for jury determination, and thus the lynchpin issue is purely legal"); *Williams v. Mehra,* 186 F.3d at 689–90 (emphasizing that *"regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the appeal to the extent it raises questions of law").

While the adversaries, in the instant case, disputed several factual issues in the trial court, none of those disputed facts were essential to the qualified immunity defense pressed by the officers. *See* Fed. R.Civ. P. 56(c); *Berryman v. Rieger,* 150 F.3d 561, 563 (6th Cir.1998) (concluding that the defendant is entitled to qualified immunity on an interlocutory appeal when the evidence, viewed in the light most favorable to the plaintiff, fails to prove a *prima facie* violation of clear constitutional

law).[1] Whether Smith was fifteen feet or eighteen feet from the officers is not a material question of fact as to the issue of qualified immunity. Nor was it material to the issue of qualified immunity that one witness alone, out of multiple other witnesses, failed to see the weapons in Smith's hands that were later found beside his body.[2] Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (concluding "that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" for the moving party to be entitled to a judgment as a matter of law) (emphasis in original).

Contrary to the majority opinion, this court may properly review "whether, on the plaintiff's facts, there has been a constitutional violation" and "whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.'" *Hoover v. Radabaugh,* 307 F.3d 460, 464 (6th Cir. 2002) (*quoting Dickerson v. McClellan,* 101 F.3d at 1158). Moreover, this Court has emphasized that a "defendant's right to appeal the denial of qualified immunity does not turn on the phrasing of the district court's order." *Christophel v. Kuku-*

*linsky,* 61 F.3d 479, 484 (6th Cir.1995). When, as in the instant case, the district court's denial of the defendants' motion for summary judgment is premised on the existence of fact issues that do not affect the defendants' rights to qualified immunity, then the legal question is properly presented for appellate review.

Indeed, the Supreme Court recently rejected the Ninth Circuit's approach, indistinguishable from that adopted by the majority opinion in the instant case, of denying summary judgment any time a material issue of fact remained on an excessive force claim. *Saucier v. Katz,* 533 U.S. 194, 201, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In *Saucier,* the Supreme Court cautioned that such an approach "could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Id.* (*quoting Harlow v. Fitzgerald,* 457 U.S. at 818). Further, the Court explained, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (*citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

Excessive force claims are properly, but only initially, analyzed under the Fourth

---

1. Other circuits have also recognized that the materiality of the disputed issues of fact are permissible subjects for appellate review. *Jeffers v. Gomez,* 267 F.3d 895, (9th Cir.2001) (observing that "[e]ven if disputed facts exist about what actually occurred, a defendant may still file an interlocutory appeal if the defendant's alleged conduct in any event met the standard of objective legal reasonableness under clearly established law regarding the right allegedly infringed"); *Salim v. Proulx,* 93 F.3d 86, 90 (2nd Cir.1996) (same).

2. See, for instance, the Fourth Circuit case of *Sigman v. Town of Chapel Hill,* 161 F.3d 782, 787 (4th Cir.1998), similar to the one at bar, wherein the court rejected affidavits by witnesses who claimed that they could not see the knife in the suspect's hand at the instant that the shots were fired, concluding that the affidavits "do not dispute the fact that a large knife was recovered from the ground near Sigman after he was felled by shots."

Amendment's objective reasonableness standard. *See Saucier v. Katz*, 533 U.S. at 201, 205; *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The court must first determine whether the plaintiff has stated a claim of a constitutional violation at all. *See Skousen v. Brighton High School*, 305 F.3d at 526 (*citing Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that when evaluating a claim of qualified immunity the court must first determine whether the plaintiff states a claim of a constitutional violation, and then must determine whether the claimed right was clearly demonstrated, before it may proceed to the qualified immunity question)). The reasonableness of the officers' actions must be assessed from the officers' vantage point at the scene of the alleged violation. *See Saucier*, 533 U.S. at 205; *Graham*, 490 U.S. at 396–97 (observing that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). Such an assessment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotation omitted). In instances of excessive force, the reviewing court should consider the facts and circumstances of each particular case, including such nonexhaustive factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Saucier*, 533 U.S. at 205 (citation and quotation omitted).

The plaintiff, in the instant case, had not proved that the legal effect of the alleged facts formed a constitutional violation. A careful review of the record has suggested, contrary to the majority opinion, that witness Louise Luster's testimony did not create a genuine issue of material fact. First, Luster did not testify that Smith was unarmed or cooperative with the officers. While Luster testified that she did not see anything in Smith's hand, her failure to see the knife and brick does not undercut or create a fact question concerning whether Smith was armed in light of the undisputed testimony of others that Smith had a knife and a brick coupled with the evidence that these weapons were found next to Smith subsequent to the shooting. Luster's further testimony that the officers were within four feet of Smith seconds prior to the shooting and Smith "backed up" toward the fence, was consistent with the officers' descriptions of the events and did not create a fact question regarding whether appellee posed a serious risk of harm to the officers and others.[3] *See, e.g. Wilson v. Meeks*, 52 F.3d

**3.** Luster testified that Smith "backed up" toward the fence on her property and was shot. However, a parsing of Luster's testimony in comparison with the pictures, maps and diagrams of the location, provided in the record, indicated that Smith was not in retreat. Luster testified that when Smith was shot, Kim and Yankowski were standing just in front of the plant stand located a few feet from the roadway. She acknowledged that seconds earlier Kim and Yankowski were within four feet of Smith near the chair in the driveway in which he was sitting, approximately twenty-

five feet from the road. The district court has maintained this testimony created a fact question concerning whether Smith was coming towards the officers or backing away from them. However, if Smith had been moving backward, as the court concluded, he would have been moving toward the car at the top of the driveway. Luster testified that Smith was not moving toward the car, but was instead moving toward the fence where she was standing, proximate to the officers. Thus, despite Luster's use of the term "backed up,"

1547 (10th cir.1995) (concluding that even where there was a factual dispute concerning whether the plaintiff was backing up and surrendering, "the inquiry was not into [plaintiff's] state of mind or intentions, but whether, from an objective viewpoint and taking all factors into consideration, [the defendant officer] reasonably feared for his life."). Finally, Luster's lay opinion testimony that Smith "did not do anything that would have placed her and the bystanders or the officer in danger for their lives," did not create a fact question because it did not suggest that a reasonable officer in Kim's position, given the information available to him during a fast-evolving incident, could not have reasonably believed that the use of force was necessary.

Similarly, a review of Shyla Keys's affidavit has suggested that it presents no material factual dispute concerning whether force was reasonable under the circumstances. Keys attested that she witnessed Smith threatening the officers with a weapon when she observed "Smith pick up a brick and make a gesture as if he was going to throw the brick at the officers." Moreover, Keys's estimate that Smith was approximately 18 feet from the officers supports the defendants' argument that the use of force was objectively reasonable.

Even assuming, *arguendo*, that the alleged facts were enough to prove the officers' conduct excessive under objective standards of reasonableness, pursuant to *Saucier*, this would not end the analysis. *Saucier v. Katz*, 533 U.S. at 202. The court must also conduct a second, qualified immunity review, separate from the reasonableness inquiry, in which it must determine the officer's perception of the alleged violated right. *See id.* at 205. In contrast to the *Graham* constitutional vio-

lation analysis, which focuses on the reasonableness of the officials' actions, the qualified immunity analysis probes whether the officers' belief in the state of the law was reasonable. As the Court explained in *Saucier*:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205. Thus, even if the officer unreasonably used force in violation of the Fourth Amendment, qualified immunity should be granted if the officer had a reasonable, albeit mistaken, belief about the legality of the officer's actions. *See id.; Anderson v. Creighton*, 483 U.S. 635, 640–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Thus, under the controlling analysis enunciated in *Saucier*, if officer Kim reasonably, but even mistakenly, believed that Smith was likely to fight back, Kim would be justified in using more force than in fact was needed. *Saucier v. Katz*, 533 U.S. at 205. The alleged facts clearly proved that Kim could reasonably believe that Smith's threatening behavior created an imminent danger. The record indicated that the officers were obligated to take

---

her testimony makes clear that Smith was moving in a manner consistent with the officer's testimony. J.A. at 122–25, 197.

Smith into custody because they had been advised that he was potentially violent. Moreover, Smith was actively resisting the officers' attempt to take him into protective custody, he was brandishing a knife and had picked up a second weapon. a brick, which he was threatening to use against the officers. Consequently, officer Kim could have reasonably feared for his safety and the safety of others in Smith's vicinity, forcing Kim to make a difficult, split-second decision regarding the amount of force required to defend himself against serious injury or even death.

Curiously, the majority opinion has ignored the disposition of officer Yankowski's motion for summary judgment. Nevertheless, because Yankowski did not fire his weapon during the incident, the *Saucier* analysis mandates dismissal of the excessive force claim lodged against him, on the basis of his qualified immunity. Such a disposition is emphasized by the pre-*Saucier* case of *Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir.1998), upon which the majority opinion has relied for its jurisdictional conclusions. In *Sova*, this court granted summary judgment for the only officer involved in the incident who did not fire his weapon. *Id.* at 903. Indeed, this court granted that defendant in *Sova*, officer Gaffka, summary judgment despite the fact that he sprayed Sova in the face with mace during the initial segment of the encounter, effectively exacerbating an already tense conflict. *Id.* at

901. Likewise, because there were no material factual disputes concerning officer Yankowski's conduct this court should have reached the same disposition as the court in *Sova*, regarding Yankowski's motion of dismissal.[4]

The *legal effect* of these facts is in dispute, not the facts themselves. Consequently, this Court may exercise jurisdiction to review the officers' interlocutory appeal of the trial court's denial of their summary judgment motion upon the legal issue of qualified immunity. Under the recently enunciated directive in *Saucier*, the plaintiff has not proved, as a question of law, that the officers believed unreasonably that they and others faced imminent danger from the plaintiff's conduct. In light of this finding of law, I would grant the defendant officers' motion for summary judgment on the basis of their qualified immunity and dismiss the case with prejudice.

Accordingly, I dissent.

---

4. The district court denied Yankowski qualified immunity, explaining that a factual issue existed concerning whether Yankowski "purposely refused to tell Officer Kim about Smith's mental condition." A review of the record discloses that the only evidence remotely addressing that finding was Yankowski's deposition, in which he admitted to having been unable to relay the specifies of Smith's condition to officer Kim because they were preoccupied with locating Smith's proper address and had arrived in separate squad cars. Yankowski did, nevertheless, testify to having informed Kim of Smith's proclivity toward violence. Consequently, the district court's conclusion regarding Yankowski's conduct appears to be nothing more than an impermissible effort to elevate an assertion of negligence into a constitutional violation.