William **BUCHANAN**, Plaintiff,

v.

**CITY OF MILWAUKEE and Jeremy Sullivan**, Defendants.

No. 02–C–0486.

United States District Court, E.D. Wisconsin.

Oct. 27, 2003.

Joseph E. Schubert, Milwaukee, WI, for Plaintiff.

Susan E. Lappen, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff William Buchanan ("plaintiff") brings this action under 42 U.S.C. § 1983 alleging that defendant Jeremy Sullivan ("defendant" or "Sullivan"), a City of Milwaukee police officer, violated his Fourth Amendment right to be free from excessive force by shooting him in the abdomen during an encounter at plaintiff's residence.[1] Plaintiff commenced the

---

1. In his complaint, plaintiff also named the City of Milwaukee as a defendant and alleged that it failed to properly train and supervise Sullivan. Plaintiff also brought state law tort claims against Sullivan. However, plaintiff makes no arguments in support of these claims in response to the motion for summary judgment; thus, he has abandoned them. *See* *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999) (stating that arguments not presented to the district court in response to summary judgment motion are waived). Therefore, plaintiff's Fourth Amendment claim against the City and his state law claims against Sullivan will be dismissed.

action in state court, but defendant removed it to this court. Before me now is defendant's motion for summary judgment.[2]

## I. FACTS

Plaintiff, who was thirty-three years old at the time of the incident giving rise to this action, has a long history of mental illness and has been found to be disabled by the federal and state governments due to his illness. Prior to the incident in question, he was taking numerous medications in order to remain stable. He also had a history of alcohol abuse. In the days and weeks before the shooting, plaintiff was having a particularly difficult time of it, experiencing severe mood swings and hearing voices telling him to commit suicide. As a result of these difficulties, he was hospitalized for a time.

On February 21, 2000, plaintiff was hearing voices telling him to kill himself and experiencing a great deal of anxiety. He attempted to calm himself by over-medicating. In a telephone conversation with his mother, he used threatening and abusive language, apparently uncharacteristically. One of his roommates, James Reed, admonished him for speaking that way to his mother, and plaintiff and Reed wound up wrestling on the floor, in the course of which plaintiff hit Reed with a pickle jar, causing a cut on Reed's head. Plaintiff recalls that he also threw a flower pot at his other roommate, Jonathan Krause. At some point, plaintiff became so distressed that he pulled a butcher knife from the waistband of his pants and stated that he intended to cut his own wrists or throat.

Uniformed police officers Sullivan and Todd Baldwin were on patrol and received a dispatch that a battery was in progress at 1607 North Astor Street (the apartment building where plaintiff and his roommates lived), and that the suspect had a weapon. When the officers arrived at the building, they found ambulance attendants treating the cut on Reed's head. Reed told the officers that plaintiff would not permit Krause to leave the apartment.

---

**2.** Defendant also moves to dismiss based on plaintiff's failure to prosecute his claim and to comply with discovery requests. Defendant states that plaintiff has not named an expert witness regarding proper police procedure, has not conducted discovery, and has not signed medical authorizations. Dismissal for failure to prosecute is "an extraordinarily harsh sanction" and should occur "only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir.1998) (internal quotation marks omitted); *see also Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 720 (7th Cir.2001) (stating that court should dismiss based on party's failure to respond to discovery requests only when party persistently fails to comply and displays wilfulness, bad faith or fault in doing so). Plaintiff's failures in the present case do not rise to that level. Defendant cites no authority for the proposition that an expert witness is required in a deadly or excessive use of force case, and I have found none. *See Robinson v. City of West Allis*, 239 Wis.2d 595, 601, 611, 619 N.W.2d 692 (2000) (holding that expert testimony is not mandatory in excessive force case and that district court erred in granting summary judgment based on plaintiff's failure to proffer an affidavit from expert countering that offered by defendants); *see also Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir.1999) (holding that expert testimony was not required because "the question whether the danger was sufficiently lethal and imminent to justify the use of deadly force was within lay competence"). Defendant also provides no authority for the proposition that plaintiff's failure to conduct his own discovery (as opposed to obstructing defendant's) should result in dismissal. Finally, plaintiff has indicated that he will sign the requested authorizations, and defendant fails to demonstrate any bad faith or prejudice resulting from the delay. Therefore, for all of these reasons, the motion to dismiss will be denied.

The officers requested back-up, which soon arrived, and then entered the building. Plaintiff, who lived on the second floor, emerged from his apartment with the knife in his hand. Sullivan states that Baldwin drew his gun and ordered plaintiff to drop the knife, and that plaintiff responded by pressing the knife to his chest and using words to the effect of "you're gonna have to shoot me—I won't drop the knife." (Sullivan Aff. ¶ 16.) Sullivan further states that, at a certain point, plaintiff pointed the knife in Baldwin's direction and began to move toward him, and Baldwin fired three shots. None of the shots hit plaintiff, and he went back into his apartment. Baldwin, Sullivan and the other officers then exited the building via the front entrance. Soon thereafter, plaintiff appeared on the second floor balcony outside his apartment still holding the knife. At this point, Sullivan was standing outside the building. He estimates that plaintiff was about ten feet from him.

There is a dispute between the parties concerning what happened next. Plaintiff states that he was holding the knife in his right hand, and that he brought the tip of the knife toward himself so that the blade was turned inward toward his own stomach or chest. He states that when he turned the knife toward himself, Sullivan shot him in the stomach. Sullivan states that plaintiff made the sign of the cross with the knife, closed one eye as if he were taking aim and raised the knife to the right side of his head. This caused Sullivan to fear that plaintiff was going to throw the knife at him or jump off the balcony on him; thus, he shot plaintiff.

Plaintiff sustained a serious injury and was hospitalized for several weeks.

## II. DISCUSSION

Defendant moves for summary judgment on the ground that he did not use excessive force and that, even if he did, he is entitled to qualified immunity.

### A. Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be "material," it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The movant may satisfy that burden by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party's initial burden is met, the nonmoving party must go beyond the

pleadings and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a summary judgment motion, a court may not make credibility determinations or weigh the evidence; "these are jobs for a factfinder." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003). "Rather, '[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" *Id.* (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994)). The court must look at the evidence as a jury might, construing the record and drawing all reasonable inferences from it in the light most favorable to the nonmovant. *Id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## B. Elements of Section 1983 Claim

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to prove a violation of § 1983, plaintiff must show that defendant de-prived him of a federal constitutional right while acting under color of state law. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996); *Estate of Thurman v. City of Milwaukee,* 197 F.Supp.2d 1141, 1147 (E.D.Wis.2002). It is undisputed that Sullivan was acting under color of state law. The only issue is whether plaintiff was deprived of a federal constitutional right. Plaintiff contends that Sullivan deprived him of his rights secured by the Fourth Amendment.

## C. Plaintiff's Fourth Amendment Claim

### 1. Reasonableness of Seizure

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. All claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other seizure of a citizen who is not in custody are analyzed under the Fourth Amendment and its objective "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the present case, the parties do not dispute that a seizure occurred. The only question is whether, by shooting plaintiff, defendant acted reasonably.

In determining whether reasonable force was used, I balance the extent of the force used against the need for it. *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In making this determination, I assess the relevant facts from the perspective of a reasonable officer on the scene rather than with 20/20 hindsight. *Graham,* 490 U.S. at 397, 109 S.Ct. 1865.

I first consider the nature and quality of the intrusion on plaintiff's Fourth Amendment interests. *Garner,* 471 U.S. at 8, 105 S.Ct. 1694. In the pres-

ent case, Sullivan shot plaintiff in the stomach. This was an application of "deadly force" because it created a substantial risk of death or serious injury to plaintiff. *See Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 593 (7th Cir. 1997) (stating that for a particular application of force to be classified as "deadly," it must carry with it a substantial risk of causing death or serious bodily harm). Plaintiff's "fundamental interest in his own life need not be elaborated upon." *Garner,* 471 U.S. at 9, 105 S.Ct. 1694.

Next, I consider whether the circumstances justified the use of such force. Deadly force may be used if an officer has probable cause to believe that the suspect's actions place the officer or others in imminent danger of death or serious bodily harm. *See id.* at 11, 105 S.Ct. 1694; *Muhammed v. City of Chicago,* 316 F.3d 680, 683 (7th Cir.2002). The standard is an objective one—whether the officer's belief was "objectively reasonable" in light of the facts and circumstances confronting him. *Graham,* 490 U.S. at 397, 109 S.Ct. 1865.

In the present case, taking the facts in the light most favorable to plaintiff, a reasonable jury could conclude that Sullivan's belief that he needed to shoot plaintiff was unreasonable. According to plaintiff's version of the events, plaintiff was not engaging in conduct that could reasonably be regarded as creating a risk of death or serious bodily harm to Sullivan. Plaintiff states that he pressed the blade of the knife against his own chest or stomach giving no indication that he intended to throw the knife at Sullivan. Based on

plaintiff's testimony, a reasonable factfinder could conclude that Sullivan's belief that plaintiff was about to throw the knife at him or jump off the balcony on him was unreasonable, and that Sullivan was therefore not justified in using deadly force. Even according to Sullivan's testimony, there is little basis from which it could reasonably be inferred that plaintiff intended to jump off the balcony. Sullivan does not indicate that plaintiff threatened to jump, or that he moved toward or attempted to climb over the railing.[3]

Thus, there is a dispute about what plaintiff did prior to the shooting, and such dispute bears directly on the reasonableness of Sullivan's belief that he was in imminent danger. I cannot on a motion for summary judgment decide whose version of events is more credible. Therefore, defendant's motion for summary judgment on the merits of plaintiff's Fourth Amendment claim must be denied.[4]

I also note that although plaintiff's conduct immediately before the shooting is the most important factor in determining whether the use of deadly force was reasonable, I must consider the totality of the circumstances. *Deering v. Reich,* 183 F.3d 645, 649–50 (7th Cir.1999). This requires me to assess "all of the events that occurred around the time of the shooting," *id.* at 652, and measure the consequences of each such event based on the extent to which it contributed to the shooting, *Abraham v. Raso,* 183 F.3d 279, 292 (3d Cir.1999). In making this assessment, I consider both the actions of the suspect and the officer. *See Estate of*

3. Sullivan does not argue that he shot plaintiff because he believed that Krause or anyone else inside the apartment building was in imminent danger of death or serious injury. Nor is there evidence that plaintiff was saying or doing anything indicating that he was about to harm Krause.

4. Defendant argues that I should grant summary judgment because plaintiff's brief was not accompanied by various materials required by a local rule. However, the factual dispute is fairly presented by the record, and I am not obliged to dismiss for noncompliance with a local rule. *See Stanciel v. Gramley,* 267 F.3d 575, 579 (7th Cir.2001).

*Starks v. Enyart,* 5 F.3d 230, 233–34 (7th Cir.1993). One relevant circumstance is whether Sullivan knew or should have known that plaintiff was mentally ill and, if so, whether he followed generally accepted police practices applicable to encounters with such persons. *See Deorle v. Rutherford,* 272 F.3d 1272, 1283 (9th Cir.2001), *cert. denied,* 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002) (stating that "where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham,* the reasonableness of the force employed"); *Palmquist v. Selvik,* 111 F.3d 1332, 1340–41 (7th Cir.1997) (indicating that an officer's awareness of an emotionally disturbed person's suicidal motivation might have a bearing on what tactics and level of force are reasonable); *Ludwig v. Anderson,* 54 F.3d 465, 472 (8th Cir.1995) (stating that the mental state of an emotionally disturbed person is relevant in assessing the reasonableness of an officer's use of deadly force).

It is unclear whether the dispatcher or plaintiff's roommate, Reed, advised the officers that plaintiff was mentally ill. In any event, it is reasonable to infer that based on their own observations of plaintiff's behavior they should have concluded as much. Plaintiff was obviously thinking about committing suicide. When Baldwin ordered him to drop the knife, plaintiff pressed the blade against his chest as if he was going to stab himself and said that Baldwin would have to shoot him to get him to drop the knife. This behavior was extremely irrational. Plaintiff had done nothing to warrant a lengthy prison sentence (he was ultimately convicted of two misdemeanors); thus, his conduct was obviously compelled by his own inner demons. Moreover, police officers are trained to recognize people suffering from serious emotional or mental problems. Michael Avery, *Unreasonable Seizures of Unreasonable People; Defining the Totality of Circumstances Relevant to Assessing the Police Use of Force Against Emotionally Disturbed People,* 34 Col. Hum. Rts. L.Rev. 261, 332 (2003).

Thus, a reasonable factfinder could conclude that Sullivan knew or should have known that plaintiff was emotionally disturbed and could reasonably take this fact into account when assessing the constitutional reasonableness of his use of force. A great deal of information has long been available to police officers concerning how to interact with persons who are emotionally disturbed. *Id.* at 290–91. These materials uniformly indicate that emotionally disturbed persons often respond slowly or inappropriately to police orders, and that officers' usual techniques for eliciting compliance from criminal suspects are not likely to work with such persons. *Id.* at 292–93. Emotionally disturbed people are already fearful, and threats or forceful verbal commands usually make matters worse by making them still more frightened. *Id.* at 292–94.

Police training materials consistently recommend that officers can greatly reduce the dangers present in encounters with emotionally disturbed persons by adhering to a few simple principles including: (1) keeping a safe distance from the person; (2) avoiding unnecessary and provocative displays or threats of force; (3) making it clear to the person that the police want to help him, and that the way to accomplish this is for the person to put down the weapon and come to the police for help; and (4) taking as much time as necessary to talk the person into custody even if it runs into hours or more. James J. Fyfe, *Policing the Emotionally Disturbed,* 28 J. Am. Acad. Psychiatry & L. 345, 347 (2000). If the emotionally disturbed person is armed with a knife, it is recommended that officers maintain a dis-

tance of twenty-one feet from him in order to have enough time to employ a firearm against an attack. *Avery, supra,* at 294–95. In the present case, where plaintiff was on a second floor balcony and thus could not have rushed the officer, Sullivan could have made absolutely certain that he was safe simply by taking a few steps.

Thus, although the record is not entirely clear, the evidence suggests that, in dealing with plaintiff, Sullivan may not have followed accepted police practices. As previously indicated, in determining the reasonableness of Sullivan's use of deadly force, this factor is of less significance than what plaintiff did or did not do immediately before the shooting, but it also weighs against granting summary judgment.

### 2. Qualified Immunity

Sullivan argues that even if he violated plaintiff's Fourth Amendment rights summary judgment must be granted on the basis of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court explained how to address the qualified immunity issue on a summary judgment motion in an excessive force case. The initial inquiry is whether, taking the facts in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Id.* at 201, 121 S.Ct. 2151. In the present case, I have already determined that, taking the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that

by using deadly force Sullivan violated plaintiff's rights under the Fourth Amendment.

The second sequential step is to ask whether the right was clearly established at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether the right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

■■■ The plaintiff bears the burden of establishing the existence of a clearly established constitutional right. *Jacobs v. City of Chicago,* 215 F.3d 758, 766 (7th Cir.2000). A right is clearly established when its contours are " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 767 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■■■ However, it is not necessary that the very action being challenged has been previously held unconstitutional, so long as the unlawfulness was apparent in light of existing law. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

> [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, ... we [have] expressly rejected a requirement that previous cases be "fundamentally similar." Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar" facts. Accordingly, ... the salient question ... is whether the state of the law [at the time of the alleged conduct] gave [the defendants] fair warning that their al-

leged treatment of [the plaintiff] was unconstitutional.

*Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *United States v. Lanier,* 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (stating that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," even though the very action in question has not previously been held unlawful); *see also Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir.1996) (stating that in excessive force case plaintiff may overcome qualified immunity defense by "(1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment").

■■■ It was clearly established at the time of this incident that the excessive use of force during an arrest or other seizure constituted a Fourth Amendment violation, *Titran v. Ackman,* 893 F.2d 145, 146 (7th Cir.1990); and that the use of deadly force was permissible only when the officer reasonably believed that the suspect posed an immediate threat to the officer or others, *Garner,* 471 U.S. at 11, 105 S.Ct. 1694. If the facts are as plaintiff describes them, Sullivan is not entitled to qualified immunity. Sullivan employed deadly force on a suspect who threatened no one but himself. As an objective matter, on February 21, 2000, a reasonable police officer would have known that it was unreasonable to use deadly force against a person who did not pose a threat of death or serious bodily harm. If the facts are as Sullivan claims, the result could be different. *See Haugen v. Brosseau,* 339 F.3d 857, 863 (9th Cir.2003) ("Where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in

using deadly force. . . . On the other hand, the mere fact that a suspect possesses a weapon does not justify deadly force.").

■■■ The Seventh Circuit has consistently held that if further factual development is necessary to determine whether the officer is entitled to qualified immunity the court may deny the officer's pre-trial motion. *See, e.g., Payne,* 337 F.3d at 780–81; *Garvin v. Wheeler,* 304 F.3d 628, 633–34 (7th Cir.2002); *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 476 (7th Cir.1997). Because I cannot decide on summary judgment whose version of the facts is correct, I cannot determine as a matter of law whether Sullivan is entitled to qualified immunity. Therefore, defendant's motion for summary judgment on the grounds of qualified immunity must be denied. *See, e.g., Smith v. Kim,* 70 Fed. Appx. 818, 819–21, 2003 WL 21698915 (6th Cir.2003) (affirming denial of summary judgment on qualified immunity grounds where officers claimed they shot plaintiff because he threatened them with a small knife and a brick, advancing toward them with these items in hand, but plaintiff's witnesses either denied that plaintiff had a knife or brick, or said that he had a brick but did not advance toward the officers); *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 902–03 (6th Cir.1998) (denying summary judgment on qualified immunity grounds in deadly force case where mentally ill and suicidal decedent cut himself with knives, broke windows, and said he wanted police to shoot him; officers said decedent threatened to get gun and charged at them through kitchen door with knives drawn, but plaintiff claimed that decedent never mentioned gun and was shot before he stepped out of the kitchen doorframe); *Howerton v. Fletcher,* No. 97–CV–914, 1998 U.S. Dist. LEXIS 18353, at *3–16 (M.D.N.C. Sept. 21, 1998) (denying motion for summary judgment on qualified immunity grounds in deadly force case where officers claimed that decedent acted errati-

cally, aggressively advanced upon them with knife to distance of less than twenty feet, and disregarded repeated commands to drop knife, but plaintiff presented evidence that decedent was not advancing on or threatening anyone and that while he had knife in his hand he did not raise it toward anyone); *Samander v. Flemmig,* 20 F.Supp.2d 343, 346–47 (D.Conn.1998) (denying motion for summary judgment on qualified immunity grounds in deadly force case where decedent had stabbed his father and was restraining mother in house with him, but evidence was presented that at time of shooting he was standing rigidly with the knife at his shoulder and had made no movement to throw knife at officers or advance on them); *Bean v. City of Buffalo,* No. 90–CV–880S, 1993 WL 152081, at *3–7 (W.D.N.Y. April 26, 1993) (denying summary judgment due to "legitimate questions concerning the immediacy of any threat" by decedent where officers claimed decedent advanced with knife and ignored commands to drop it, but plaintiff presented evidence that decedent held knife at her side and was farther away from officers than they claimed when shot).

### III. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendants' motion to dismiss for failure to prosecute is **DENIED**.

**IT IS FURTHER ORDERED** that Sullivan's motion for summary judgment on plaintiff's Fourth Amendment Claim is **DENIED**, but with respect to plaintiff's state law claims is **GRANTED**.

**IT IS FURTHER ORDERED** that the City's motion for summary judgment is **GRANTED**.