In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4187

SAMUEL MUHAMMED,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 1171—**Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 1, 2002—DECIDED DECEMBER 13, 2002

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

PER CURIAM. Samuel Muhammed brought this civil rights and wrongful death action against the City of Chicago and two police officers, alleging on behalf of himself and the estate of his son Samuel Mitchell that the officers were not justified in shooting Mitchell to death while responding to an armed bank robbery. The district court granted summary judgment to the defendants on all claims, concluding that Muhammed failed to raise a genuine issue of material fact regarding the officers' justification for shooting Mitchell. We affirm.

On the afternoon of March 2, 1999, a man robbed the LaSalle National Bank branch at 515 North LaSalle Street

in Chicago at gunpoint. The robber obtained approximately $20,000 in currency, which he placed in a black, white, and red plastic bag before fleeing south on LaSalle Street. Several bank tellers and security guards described the robber as a black man, about 5'8" tall, ranging in age from 20-31 years old, wearing a navy jacket, blue pants, sunglasses, and a blue "fisherman's" hat.

Chicago police dispatchers broadcast the robber's description over the police radio. Officers James Volland and Raymond Allen were on patrol in plain clothes when they heard the broadcast. Shortly thereafter, while driving east on Lake Street near Jefferson and Clinton, the officers spotted a man fitting the suspect's description walking toward their vehicle. Volland and Allen stopped the man, later identified as Samuel Mitchell, and questioned him about the robbery. Allen identified himself and Volland as Chicago police officers and ordered Mitchell to stop. Mitchell pointed a gun at Allen, and Allen ducked behind his car door. Volland, fearing that Mitchell would shoot Officer Allen, fired two shots and hit Mitchell. Mitchell fell to the ground. Volland again identified himself and Allen as police officers to Mitchell, as had Allen. Mitchell aimed his gun at Volland, who fired two more shots at Mitchell because he was in fear of serious bodily injury. Mitchell was hit four times and died at the scene. Neither Officer Allen nor Mitchell fired their weapons during the incident.

Muhammed sued the City and the two officers under 42 U.S.C. § 1983 and Illinois' Wrongful Death Act, 740 Ill. Comp. Stat. 180/1. The defendants moved for summary judgment and provided affidavits supporting their view that Officer Volland was justified in shooting Mitchell because Mitchell had aimed his gun and threatened the lives of the two officers. Muhammed opposed the motion with affidavits and deposition testimony, arguing that a factual dispute about the robber's identity precluded

summary judgment. The district court granted summary judgment for the defendants on the ground that Muhammed had failed to demonstrate a genuine issue of material fact regarding the reasonableness of the officers' use of deadly force. Whether Mitchell actually robbed LaSalle Bank, the court reasoned, was irrelevant to the question of whether Volland was justified in shooting Mitchell.

We review a district court's grant of summary judgment *de novo* and view the facts in the light most favorable to the nonmoving party. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir. 2001). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The estate's civil rights claim (and Muhammed's correlative § 1983 claim for the loss of his son's society and companionship, *see Bell v. City of Milwaukee*, 746 F.2d 1205, 1244 (7th Cir. 1984)) arises under the Fourth Amendment's prohibition against unreasonable seizures. A police officer's use of deadly force is a seizure within the meaning of the Fourth Amendment and accordingly must be reasonable. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Deadly force may be used if the officer has probable cause to believe that the armed suspect (1) "poses a threat of serious physical harm, either to the officer or to others," or (2) "committed a crime involving the infliction or threatened infliction of serious physical harm" and is about to escape. *Id.* at 11-12. Whenever possible under the circumstances, the officer should try to identify himself as a law enforcement officer to the suspect. *Id.*; *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (en banc). An officer's determination of the appropriate level of force to use must be measured from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). What is important is the amount and quality of the

information known to the officer at the time he fired the weapon when determining whether the officer used an appropriate level of force. *Sherrod*, 856 F.2d at 804-05. Thus, "when an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Id*. at 805 (emphasis omitted). The same rule applies to Muhammed's wrongful death claim under Illinois law. *See* 720 ILCS 5/7-5; 740 ILCS 180/1.

On appeal Muhammed has abandoned his claims against Allen and initially argues that summary judgment for the City and Volland was not proper because there is a dispute regarding whether Mitchell actually robbed La-Salle Bank. According to Muhammed, the robber's identity is material to the outcome of the lawsuit. It is undisputed that Mitchell threatened the officers with a gun subsequent to the time the officers knew that an armed robbery had been completed. This makes the identity of the individual who robbed the bank irrelevant in assessing whether Volland was justified in shooting Mitchell in the factual situation set forth above. *See Garner*, 471 U.S. at 11.

Muhammed also argues that the second round of shots fired by Volland could be viewed as excessive force because Mitchell either did not aim a gun at Volland or was incapacitated by Volland's first set of shots. Muhammed has failed to identify any specific eyewitness testimony that contradicts Volland's testimony that Mitchell aimed his gun at Volland after he had aimed at Allen. He does allude to purported testimony evidencing "the locations and the effects of the various bullet wounds to" Mitchell in an attempt to cast doubt on whether Volland needed to fire a second round of shots at Mitchell to incapacitate him, but Muhammed has not identified any such testimony in the record before us. Without some evi-

dence of a disputed material fact, summary judgment was appropriate. *Outlaw*, 259 F.3d at 837.

Muhammed finally argues that summary judgment was not appropriate because a jury could choose to disbelieve Volland's account of the shooting. To have prevented summary judgment, Muhammed needed to provide specific evidence when attacking Volland's credibility, such as contradictory eyewitness accounts or other impeachment evidence. *See Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) ("A motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit.").

The district court grant of summary judgment is hereby AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
