Per Curiam.
Indianapolis police officer James Gray fatally shot an agitated Keith Koster when Koster threatened to fire a "warning shot" and then pointed his gun at police officers gathered in the doorway of his apartment. Koster's sister sued on behalf of his estate, claiming that Gray violated the Fourth Amendment by using excessive force. The district court denied Gray's motion for summary judgment based on qualified immunity. Because Gray acted reasonably when Koster pointed a gun at him and fellow officers, he did not violate the Fourth Amendment and is entitled to qualified immunity. We therefore reverse the district court's decision and remand with instructions to enter judgment for Gray.
Background
None of the following was disputed at summary judgment: In January 2014, Timothy Bess called the Indianapolis Metropolitan Police Department, requesting that it send staff to check on his friend, Keith Koster. Bess reported that Koster suffered from chronic fatigue and digestive system issues, and that he was vomiting and having trouble breathing.
Emergency personnel responded to Bess's call. Sarah Hunt, Koster's apartment-complex manager, gave them the keys to Koster's apartment in case Koster could not answer the door. Once Officer Billy Murphy unlocked the door, the situation escalated quickly. Koster yelled repeatedly: "Don't come in!" Hunt heard firefighter Ben Holton say, "We're here to help you." But Koster shouted, "If you enter my apartment I will shoot you." Hunt and Holton warned the others about seeing a gun in Koster's right hand, and then they left the scene.
*738 From the doorway, Murphy took control. He saw Koster sitting up in bed with a gun in his right hand, swallowing several pills. Murphy talked with Koster, trying to convince him to put down the gun. Then SWAT members (including Sergeant Steve Walters and defendant James Gray) arrived and changed places with Murphy.
A hostage negotiator, Officer Daniel Rosenberg, began discussions with Koster. Koster asked to speak with his medical advocate, but Rosenberg said that would be too dangerous while Koster still held the gun. Koster also asked for his brother, an Indianapolis officer, so someone called and left a voicemail for Koster's brother. Koster still refused to put down the gun.
Koster's agitation grew, and he declared that he would "fire a warning shot." Walters told the officers in front of him to stay down, because "If [Koster] comes up, [Walters would] fire less-lethal rounds," and Walters did not want to hit the back of an officer's head. Rosenberg saw Koster move his right arm up and point his gun, and so Rosenberg ducked behind the SWAT ballistics shields.
Two SWAT members fired their weapons when they saw Koster's movement. Walters said that he saw Koster point the gun "right at our face[s]." So he fired one beanbag round. Gray, who had the priority of shot (he occupied the position with the best viewpoint to shoot), said that he saw Koster's arm come "essentially to full extension. It was pointed out towards us." Immediately following Walters's shot, Gray fired three bullets at Koster's head; two hit him. Emergency personnel transported Koster to the closest trauma center, where he died.
On behalf of Koster's estate, Dawne Sanzone, Koster's sister, brought this suit under 42 U.S.C. § 1983, against officers Murphy and Gray, among others. She asserted various claims, including false arrest and excessive force.
After discovery, the defendants moved for summary judgment. They all raised a qualified-immunity defense, arguing that they did not violate any clearly established constitutional right. Koster was not falsely arrested, they argued, because the officers had probable cause to arrest him, and the use of deadly force was not excessive because "Koster had his gun raised and pointed directly at Officer Gray and the other officers."
The Estate responded that questions of fact precluded summary judgment based upon qualified immunity. There were facts suggesting that Koster's statement that he would fire a warning shot was not a "threat," the Estate asserted. And the Estate's response cited an expert witness's opinion that Gray's use of force was unreasonable. That response, however, not only failed to dispute the defendants' proposed undisputed fact that Koster pointed his gun at the officers, but it also specifically set forth as a fact Gray's Internal Affairs statement that Koster raised his gun and pointed it directly at the officers.
The district judge granted the defendants' motion for summary judgment as to Murphy but not Gray. The judge concluded that a reasonable officer would have believed that Koster's immediate detention was necessary in order for him to receive medical attention and assistance, and so Murphy and the other officers were entitled to qualified immunity for the seizure. As for Gray, the judge stated as an undisputed fact that Koster pointed his gun at the officers. Nevertheless, the judge decided that Gray used greater force than was reasonable because he did not take cover or wait for the less-lethal option before shooting. And so, citing only the general standard found in *739 Graham v. Connor , 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the judge concluded that Gray violated Koster's clearly established right to be free from excessive force. Accordingly, the judge denied the motion for summary judgment as to Gray's alleged use of excessive force and the related assault, battery, and wrongful death claims. Gray now appeals the decision that he is not entitled to qualified immunity.
Analysis
As a threshold matter, the Estate argues that this court lacks jurisdiction over this appeal. A district court's denial of summary judgment is typically an "unappealable interlocutory order." White v. Gerardot , 509 F.3d 829, 832-33 (7th Cir. 2007) (quoting Matterhorn Inc. v. NCR Corp. , 727 F.2d 629, 633 (7th Cir. 1984) ). But there is an exception for denials of qualified immunity that turn on issues of law. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In such appeals, this court may review the decision if it accepts as true "the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." Johnson v. Jones , 515 U.S. 304, 319, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ; Leaf v. Shelnutt , 400 F.3d 1070, 1078 (7th Cir. 2005).
That exception applies here. The Estate argues that the district judge denied Gray's motion because there were material facts in dispute, rather than purely legal reason, and that those disputes "destroy" this court's jurisdiction. Specifically, the Estate asserts that the fact that Koster pointed a gun at the officers is "conspicuously absent" from the district court order and so the fact was not assumed to be true. But that is incorrect. In reality, the judge said: "Koster became more agitated when the officers refused to leave and informed the officers that he intended to 'fire a warning shot.' ... he began to raise up his arm that was holding the handgun ... Koster's arm came to a full extension." To support those facts, the judge cited Gray's deposition testimony in which Gray said, "Koster's arm came essentially to full extension. It was pointed out towards us." The judge assumed that Koster raised his hand and pointed his gun at Gray and the other officers in the doorway.
The Estate nevertheless insists throughout its appellate brief that Koster did not point a gun at the officers, and it cites inconsistencies in the officers' testimony as evidence. Regardless of those inconsistencies, at summary judgment the Estate never disputed the defendants' assertion, supported by evidence, that "Koster brought his arm to full extension and pointed his gun directly at the officers." Moreover, in its response, the Estate included Gray's statement that Koster pointed the gun, and then did not dispute it. The Estate therefore admitted the fact, see S.D. IND. L.R. 56.1(f)(A), and cannot dispute it for the first time on appeal. See Homoky v. Ogden , 816 F.3d 448, 455 (7th Cir. 2016) (citing Hannemann v. S. Door Cty. Sch. Dist., 673 F.3d 746, 754 (7th Cir. 2012) ). This court has jurisdiction to resolve the purely legal issue of whether qualified immunity applies.
To decide whether Gray is entitled to qualified immunity, this court must ask: (1) whether his conduct violated Koster's Fourth Amendment right; and (2) whether the right was clearly established at the time of the alleged violation. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ; Becker v. Elfreich , 821 F.3d 920, 925 (7th Cir. 2016).
This court analyzes claims of excessive force, including deadly force, under the Fourth Amendment's objective reasonableness standard.
*740 Graham , 490 U.S. at 388-89, 109 S.Ct. 1865. A suspect has a fundamental interest in his own life. Tennessee v. Garner , 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). When addressing the use of deadly force, the court considers whether a reasonable officer in the circumstances would have probable cause to believe that the suspect poses an immediate threat to the safety of the officers or others. Weinmann v. McClone , 787 F.3d 444, 450 (7th Cir. 2015). If the suspect threatens the officer with a weapon, deadly force may be used. Id . at 449-50 ; Plakas v. Drinski , 19 F.3d 1143, 1146, 1150 (7th Cir. 1994). At that point, the risk of serious physical harm to the officer or others has been shown. Scott v. Edinburg , 346 F.3d 752, 756 n.2 (7th Cir. 2003).
Gray did not violate Koster's Fourth Amendment right by defending himself and other officers once Koster pointed a gun at them. A visibly agitated Koster threatened that he would "fire a warning shot," and then raised his arm, gun in hand. While the Estate contends that Koster's warning shot would have been fired straight up in the air, we will not assume that. Koster could easily have meant that he intended to attempt firing a bullet that would whiz past Gray's ear. Gray did not need to wait and hope that Koster was a skilled marksman before taking action to shut down Koster's threat. Indeed, these circumstances place this case handily among others in which the court has sanctioned the use of deadly force. See , e.g. , Weinmann , 787 F.3d at 449-50 (7th Cir. 2015) ("[I]f [the suspect] had the gun raised to his shoulder and pointed at [the officer], then [the officer] would have been justified in using deadly force and hence entitled to qualified immunity"); Estate of Escobedo v. Martin , 702 F.3d 388, 410-411 (7th Cir. 2012) (officer entitled to qualified immunity for shooting suspect who pointed gun at officers while trapped in an apartment); Muhammed v. City of Chicago , 316 F.3d 680, 683 (7th Cir. 2002) (officer received qualified immunity for shooting suspect who aimed gun at officers).
The cases that the Estate cites to the contrary are distinguishable because they involve suspects who did not pose a threat of bodily harm. See , e.g. , Williams v. Ind. State Police Dep't , 797 F.3d 468, 482-83 (7th Cir. 2015) (because of fact dispute, the court could not credit officers' testimony that suspect threatened them with knife); Wallace v. Estate of Davies , 676 N.E.2d 422 (Ind. Ct. App. 1997) (suspect did not point gun at officers). Although the Estate contends that Koster was passively resisting arrest, and therefore posed no threat, the facts show otherwise: Koster threatened the officers when he pointed a gun at them. See Muhammed , 316 F.3d at 683-84. Accordingly, Gray did not act unreasonably when he responded with deadly force.
The Estate's other arguments fail. The Estate contends that Gray impermissibly escalated the situation before shooting by not taking cover. But the law does not establish that such conduct is relevant to an excessive-force analysis, let alone that an officer may be liable based on actions before the shooting that might have led to the use of force. See Williams , 797 F.3d at 482-83 (collecting cases). And the Estate contends that Gray should have used a less deadly method before shooting, but Graham makes it clear that the Fourth Amendment does not require the use of alternatives before deadly force in a situation such as this when there is "no time." See Bell v. Irwin , 321 F.3d 637, 640 (7th Cir. 2003) ; Plakas , 19 F.3d at 1149.
Gray did not violate the Fourth Amendment, and so there is no need to assess whether a "clearly established" right was at stake. Were it necessary, the Estate would be on shaky ground; the Estate *741 admits that it cannot point to an analogous case decided before January 2014 that would put Gray on notice that his conduct was unreasonable. And the Estate's reliance on the general standard for excessive force "is not enough" because the right must be "'clearly established' in a more particularized, and hence more relevant, sense." See Saucier , 533 U.S. at 201-02, 121 S.Ct. 2151 (quoting Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ).
We therefore REVERSE the district court's judgment and REMAND with instructions to enter judgment for Gray on the excessive-force claim.